Edward R. COLANGELO,
et al., Appellants,

v.

NORWEST MORTGAGE,
INC., Respondent.

No. C3–99–247.

Court of Appeals of Minnesota.

Aug. 3, 1999.

Review Denied Oct. 21, 1999.

Charles H. Johnson, Neal A. Eisenbraun, Charles H. Johnson & Associates, P.A., New Brighton, and Hart L. Robinovitch, Zimmerman Reed, P.L.L.P., Minneapolis, and Peter A. Pease, Berman, Devalerio & Pease, L.L.P., Boston, MA for appellants.

Alan H. Maclin, Mark G. Schroeder, Brent R. Lindahl, Briggs & Morgan, P.A., Saint Paul, for respondent.

Considered and decided by DAVIES, Presiding Judge, RANDALL, Judge, and G. BARRY ANDERSON, Judge.

## OPINION

G. BARRY ANDERSON, Judge

Appellants argue the district court erred when it granted summary judgment dismissing their claim for breach of contract and ruling that the facsimile transmission fee (fax fee) charged by respondent was a special charge outside the scope of the parties' mortgage agreements and not a prepayment penalty. Appellants also insist the district court erred when it dismissed their claims for negligent misrepresentation, unjust enrichment, and money had and received. We affirm.

## FACTS

Appellants Edward R. Colangelo and Clifford C. Firth are residents of Massachusetts. Colangelo entered into a mortgage loan with respondent Norwest Mort-

gage (Norwest). Colangelo decided to refinance his mortgage and was represented by a Massachusetts law firm. Norwest faxed a payoff statement for the loan to the law firm. The payoff statement listed a $10 fax fee. Norwest faxed a second payoff statement for the loan to a Norwest branch office. No fax fee was charged. Colangelo did not discuss the fax fee with anyone, including his attorney, before the closing date. At the closing, Colangelo tendered $127,963.26 and Norwest accepted this amount as payment in full. This amount, however, was $16.12 less than the itemized amounts on the two payoff statements.

Like Colangelo, Firth decided to refinance his mortgage with Norwest. After calling Norwest for interest rates, Firth decided to refinance with Consolidated Mortgage (Consolidated), a mortgage broker. Firth instructed Consolidated to obtain the payoff information on his Norwest mortgage. Pursuant to Consolidated's request, Norwest faxed a payoff statement to Consolidated. The payoff statement listed the $10 fax fee. Firth did not review the payoff statement until the closing. At the time, he did not question his attorney or Norwest about the fee even though his attorney mentioned it to him. Norwest released the Firth mortgage after Firth tendered a check to Norwest for the full amount listed on the payoff statement.

Appellants John B. and Shirley J. Leebens are Minnesota residents. Before paying off their mortgage, Norwest faxed a payoff statement, as requested, to the Leebenses' closer, Equity Title. Norwest charged the $10 fax fee. Norwest later provided the Leebenses with a satisfaction of mortgage after they tendered a check to Norwest for the full amount listed on the payoff statement.

Colangelo and Firth commenced an action against Norwest in October 1996, and the Leebenses did so in January 1997. The cases were consolidated and an amended consolidated class action complaint was filed. Appellants argued that,

as a condition of satisfying their mortgages with Norwest, they were required to pay the $10 fax fee. Appellants claimed the fee was barred by the terms of the mortgage.

Appellants' motion for class certification was stayed, pending a hearing on Norwest's motion for summary judgment. The district court granted Norwest's motion for summary judgment and dismissed appellants' claims in their entirety. This appeal follows.

## ISSUES

1. Did the district court err when it dismissed appellants' claim for breach of contract?

2. Is the fax fee prohibited by application of the maxims of contract construction?

3. Do genuine issues of material fact exist that preclude summary judgment?

4. Did the district court err when it dismissed appellants' claim for negligent misrepresentation, unjust enrichment, and money had and received?

## ANALYSIS

On appeal from summary judgment, the reviewing court is to determine whether any genuine issues of material fact exist and whether the district court correctly applied the law. *Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). This court need not defer to the district court's decision on purely legal issues. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984).

### I.

Appellants allege Norwest breached the terms of the mortgage agreements by requiring them to pay the fax fee as a condition of satisfying their mortgages. They argue that the fax fee is a prepayment penalty not authorized by the mortgage agreements. Appellants contend the

district court erred when it ruled that the fax fee was not a prepayment penalty, but rather a fee for a special service. The district court ruled, as a matter of law, that the fax fee was not a prepayment penalty or discharge fee and was unrelated to the satisfaction of the mortgages. According to the court, the satisfaction of the mortgages was in no way conditioned on the payment of the fax fee and that the fax fee was simply "a fee for a special service, the transmittal in an expedited manner" of payoff statements.

Appellants' argument was recently rejected in *Cappellini v. Mellon Mortgage Co.*, 991 F.Supp. 31 (1997). In that case, the bank charged a $25 fee for a duplicate payoff statement and a $15 fax fee for expedited delivery of the payoff statement. *Id.* at 35. The mortgage in that case contained language identical to the language found in the Colangelo/Firth mortgages. Noting that prepayment charges are those that "are peculiarly associated with prepayment alone," the court found that the fax and statement fees were not prepayment penalties or charges because they could be incurred in situations unrelated to prepayment, such as the updating of personal records or financial statements, or when evaluating refinancing options. *Id.* at 38. The court also found that a borrower could prepay the mortgage without obtaining a payoff statement or obtain one payoff statement by mail free of charge. *Id.* The court ruled that:

> The fax and statement fees are not prepayment charges, but are rather charges for special services outside of the basic service agreement provided to the borrower by [the mortgage company] with respect to – but not exclusively related to the prepayment of – a loan. Simply because a fee is incurred during the prepayment of the loan does not necessarily make it a prepayment charge or penalty for prepaying the loan. The charges at issues here may be incurred in the process of prepaying a loan, but they need not be and may in fact be incurred in relation to activity unrelated to prepayment of a loan, thus taking them out of the realm of the prohibited "prepayment charges" language contained in the plaintiff's Note.

*Id.*

■ Like *Cappellini*, the fax fee here may be incurred in relation to activity that is completely unrelated to the prepayment of the mortgage. It is undisputed that appellants, and other borrowers, were not required to obtain a payoff statement when they decided to refinance, payoff, or prepay their mortgages, and they were entitled to and did receive additional payoff statements at no charge if those statements were sent by U.S. mail. The fact that a cost is imposed on the borrower at the time the loan is prepaid does not render the cost a penalty; a charge is a prepayment penalty if the cost "would not be imposed if the note were paid at maturity instead of an earlier date." *Goldman v. First Fed. Savings & Loan Ass'n*, 518 F.2d 1247, 1252 (7th Cir.1975). Put most directly, the fax fee is not contingent solely on prepayment of the mortgage. It can be incurred at any time and is not imposed only when a borrower attempts to prepay the mortgage. Thus, the fax fee does not constitute a prepayment penalty barred by the terms of the mortgage agreements.

## II.

■ Relying on the maxim of contract construction, *expressio unius est exclusio alterius* (the mention of one thing excludes the other), appellants argue the fax fee is not permitted under the terms of the mortgage instruments. Under this maxim, "the expression of specific things in a contract implies the exclusion of all not expressed." *Weber v. Sentry Ins. Co.*, 442 N.W.2d 164, 167 (1989). Appellants contend that Norwest cannot charge the fax fee because it is not contained in the list of servicing-related fees described in the mortgage instruments. Similarly, appellants rely on the maxim of *contra proferentum* (instruments are construed against

the drafter) to argue that any question as to what fees and charges are authorized by the agreement must be resolved against Norwest as the drafter of the mortgage instruments.

"Where the terms of a contract are clear and unambiguous, there is no room for construction or interpretation." *Pierce v. Grand Army of the Republic*, 224 Minn. 248, 253, 28 N.W.2d 637, 640 (1947) (citations omitted). "A contract is ambiguous if its language is reasonably susceptible to more than one interpretation." *Brookfield Trade Center, Inc. v. County of Ramsey*, 584 N.W.2d 390, 394 (Minn.1998) (citation omitted). Because the language of the financial instruments here is clear and unambiguous, resort to the maxims of contract construction is not available to create ambiguity.

Even if the maxims of contract construction applied, it is not clear that Norwest is prohibited from charging the fax fee. The maxim *expressio unius est exclusio alterius* works as a double-edged sword in the present case. Just as the mortgages mention specific amounts that are required to be paid such as principal, interest, and any recordation costs, the mortgage instruments list specific charges that cannot be charged by Norwest, including prepayment charges and charges for holding and applying escrow funds. Thus, under the maxim of *expressio unius est exclusio alterius,* those fees not specifically prohibited by the mortgage instruments are, by implication, authorized. Because the fax fee is not specifically listed as a prohibited fee, by implication, Norwest is not barred from imposing the fee.

### III.

Next, appellants argue that the language of the Norwest payoff statements creates genuine issues of material fact, precluding summary judgment. Appellants rely on *Rumford v. Countrywide Funding Corp.*, 287 Ill.App.3d 330, 222 Ill.Dec. 757, 678 N.E.2d 369 (1997). In that case, plaintiff executed a mortgage with language identical to that found in the Colangelo/Firth mortgage. *See Id.* at 370, 222 Ill.Dec. 757. In addition to principal balance and interest, the payoff letter included a "$50 'reconveyance/statement fee' and a $15 'prepayment penalty/other' charge." *Id.* According to a bank vice-president, the $15 was the fee for faxing the payoff statement. *Id.* at 371, 222 Ill. Dec. 757. He stated that the mortgage would be released if the customer paid the principal and interest due in full even if the customer did not pay the fax or statement fee. *Id.* The court found that genuine issues of material fact existed between the language contained in the payoff letter and the affidavit of the bank vice-president. *Id.* at 373, 222 Ill.Dec. 757.

The decision in *Rumford* is distinguishable from the present case. The *Rumford* court concluded that a genuine issue of material fact existed because the language of the payoff statement contradicted the affidavit of the bank vice-president stating that the "prepayment penalty" was really a fax fee. Unlike the payoff statement in that case, the payoff statements in this case do not list the fax fee as a "prepayment penalty." The charge for the fax service is clearly itemized as a "fax fee." Nowhere on the payoff statements does the term "prepayment penalty" or similar phrase appear. Aside from appellants' assertions, there is nothing in the record indicating that the fee is, in fact, a prepayment penalty. Contrary to appellants' claims, the Norwest customer service manual does not state that a mortgage will not be released until the fax fee is paid in full. The manual simply provides that the "Payoff/Release [department] prepares satisfaction/reconveyances for loans that are paid in full." Unlike *Rumford*, no genuine issues of material fact exist concerning of whether the fax fee constitutes a prepayment penalty, and we therefore affirm the district court's decision on this basis.

### IV.

Appellants argue the district court erred when it dismissed their claims for negli-

gent misrepresentation, unjust enrichment, and money had and received. The district court dismissed these claims after dismissing appellants' breach of contract claim.

 "[E]quitable relief cannot be granted where the rights of the parties are governed by a valid contract." *United States Fire Ins. Co. v. Minnesota State Zoological Bd.*, 307 N.W.2d 490, 497 (Minn.1981). Where the rights of the parties are governed by a valid contract, a claim for unjust enrichment must fail and summary judgment is appropriate. *Midwest Sports Mktg., Inc. v. Hillerich & Bradsby, Ltd.*, 552 N.W.2d 254, 268 (1996), *review denied* (Minn. Sept. 20, 1996). Similarly, redress cannot be predicated on the equitable doctrine of money had and received where the rights of the parties are governed by a valid contract. *Renn v. Wendt*, 185 Minn. 461, 463–64, 241 N.W. 581, 582 (1932).

 Appellants' claim that the fax fee was unauthorized is drawn completely from the language of the mortgage instruments. Because the parties' rights are governed by the terms of valid contracts as a matter of law, the equitable remedies of unjust enrichment and money had and received cannot lie in the present case.

 Appellants contend that the district court erred when it dismissed their claim for negligent misrepresentation. Negligent misrepresentation occurs when:

"One who, in the course of his business, profession or employment, or in a transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information,

if he fails to exercise reasonable care or competence in obtaining or communicating the information."

*Bonhiver v. Graff*, 311 Minn. 111, 122, 248 N.W.2d 291, 298 (1976) (citation omitted).

 appellants failed to introduce any evidence that Norwest supplied false or misleading information to them. The payoff statements received by appellants clearly listed the fax fee separately from the mortgage principal and accrued interest. While it may have been the preferred practice, Norwest was not legally required to disclose that it would release a mortgage if the fax fee was not paid. Because appellants have failed to submit any evidence that Norwest provided false or misleading information, the district court did not err when it dismissed appellants' claim for negligent misrepresentation.

## DECISION

The fax fee charged by Norwest does not constitute a prepayment penalty and is not prohibited by the terms of the parties' mortgage agreements. Appellants cannot rely on the maxims of contract construction to construe the terms of the mortgage agreements where the language contained in the agreements is clear and unambiguous. The district court did not err when it dismissed appellants' claims for negligent misrepresentation, unjust enrichment, and money had and received.

**Affirmed.**