FIRST DIVISION 

May 30, 2000

No. 1-99-2443

STEVEN KRAUSE, PATRICIA KRAUSE, PHILLIP

LINDBERG and TAMMY LINDBERG, on Behalf of 

Themselves and All Others Similarly Situated,

Plaintiffs-Appellants,

v.

GE CAPITAL MORTGAGE SERVICE, INC.,

Defendant-Appellee.

)

)

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

Honorable

Robert V. Boharic,

Judge Presiding.

PRESIDING JUSTICE O'MARA FROSSARD delivered the opinion of the court:

Plaintiffs, Steven and Patricia Krause and Phillip and Tammy Lindberg, brought this three-

count complaint against defendant, GE Capital Mortgage Services, Inc., involving the prepayment of mortgage loans that defendant was in charge of servicing.  Plaintiffs sought damages for breach of contract (count I), restitution (count II) and unfair and deceptive practices under the Illinois Consumer Fraud and Deceptive Business Practices Act 815 ILCS 505/1 
et
 
seq
. (West 1998) (count III).  Defendant moved for summary judgment on each count of the complaint and the trial court granted the motion.  On appeal, plaintiffs argue that the trial court erred in granting summary judgment.  We affirm.

BACKGROUND

Plaintiffs brought suit on behalf of themselves and those who were similarly situated.  The plaintiffs alleged that they financed the purchases of their homes through home mortgage loans and signed promissory notes and mortgages.  The mortgages and notes prohibited any prepayment charges and contained the following language with respect to a prepayment charge, "I may make a full prepayment or partial prepayment without paying any prepayment charges."  The notes and mortgages also listed other possible loan charges, but did not list any charges that were prohibited and did not mention fees for obtaining account information on the amount the borrower owed on the loan.  Eventually, defendant acquired plaintiffs' mortgages and assumed the responsibility for servicing each of the loans.  As part of its responsibilities, defendant received borrowers' monthly payments, administered escrow amounts, and processed loan payments.  Defendant also provided a written account or payoff statement that informed the borrower the amount owed on the mortgage loan account.

Plaintiffs alleged that they entered into contracts to sell their homes and, to complete the real estate transactions, sought to payoff their mortgage loans in total before maturity.  In order to fulfill this obligation, plaintiffs were required to obtain written payoff statements from defendant.  Additionally, because of time constraints, plaintiffs requested the statements be sent by facsimile.  The payoff statements that the plaintiffs received listed not only the balance due on the mortgage loans but also included a $15 quote fee and a $10 fax fee.  The payoff statements further required full payment of the balance due on the loan including the quote and fax fees.  Plaintiffs alleged that they paid both the quote and fax fees to obtain the release of the mortgages because they did not want to breach the contract with the buyers of their homes.

Plaintiffs attached their mortgages, notes, and payoff statements to their complaint.  Plaintiffs alleged that the notes and mortgages only authorized specific fees and not a quote or fax fee.  Plaintiffs alleged that both documents prohibited any prepayment charges, which they contend the quote and fax fee constituted, and that neither the mortgages nor the notes specifically listed these charges as necessary for defendant to release the loan and security instrument.  Count I of plaintiffs' complaint alleged that defendant breached its contract with plaintiffs by imposing the fax and quote fees.  Plaintiffs further alleged that they satisfied all of the terms and conditions of the mortgage contracts and that defendant's conduct in adding the unauthorized fees to the payoff statements breached its covenant of good faith and fair dealing with plaintiffs.  Count II sought damages for restitution because, according to the complaint, the unauthorized fees conferred an inequitable benefit on defendant.  Count III alleged that defendant engaged in unfair and deceptive practices in violation of section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act (Fraud Act) (815 ILCS 505/2 (West 1998)).  The alleged unfair and deceptive practice was that defendant added "unauthorized and prohibited charges to their mortgage customers' final account balances when their customers prepared to pay off their mortgage loan, when such fees were prohibited by their customers' notes and mortgages." 

Defendant moved for summary judgment on each count of the complaint, relying in part on the affidavit of Diane Graf, a vice-president in defendant's customer service department.  Defendant argued that the fees at issue were not prepayment charges but rather were charges authorized for the services defendant performed.  Graf stated in her affidavit that defendant often responds to inquiries from mortgagors requesting a payoff quotation of the balance due on the account.  Besides mortgagors making these requests when they decide to pay off their mortgage loans before maturity, mortgagors request payoff statements for overall financial planning, to update financial statements, for divorce or bankruptcies, and for general informational purposes. 

Graf next stated that defendant did not charge for providing payoff quotes verbally, over the phone, or by mail.  However, defendant charged a $10 service fee for sending the statement by facsimile.  In addition, defendant charged in total a $15 service or quote fee if more than one written payoff statement on an account was requested.  The quote fee and fax fee are charged to the borrower's account at the time the services are rendered, but are not paid until the time the loan is paid off.  Graf stated that fax and quote fees are not necessary for prepayment of a loan because a loan could be and has been paid off without the borrower ordering a payoff statement or where the borrower only ordered one written payoff statement by mail.

Moreover, Graf discussed defendant's procedure for full disclosure of the fax and quote fees before a borrower or other party orders a payoff statement that incurs such fees.  Defendant requires its customer service agents to disclose a quote or fax fee to any party requesting a payoff statement and to explain about the possibility of additional quote fees in the future.  Defendant also operated an automated telephone system from which a borrower or representative can access and order a payoff statement.  When a party orders a payoff statement, the automated system discloses that a faxed statement on a loan, similar to the plaintiffs' statements, costs $10.  In addition, each payoff statement, as evidenced by plaintiffs' payoff statements, states that "[t]here will be a $15.00 quote fee assessed for any additional quotes requested."

Graf additionally reviewed the computer and business records of plaintiffs' loans.  On June 4, 1997, plaintiffs Steven and Patricia Krause or their attorney requested an initial payoff statement through the automated telephone system and requested that the statement be sent via facsimile.  The statement included a $10 fax fee and informed the recipient that a quote fee would be imposed for a second payoff statement.  On July 17, 1997, a second payoff statement was requested on the Krause loan and again was ordered through the automated telephone system.  The statement included a second fax fee of $10.  On July 29, 1997, the Krauses paid off their loan and paid all quote and fax fees, which consisted of the $15 quote fee for their request for a second payoff statement and total fee of $20 for the two faxed statements.   

With respect to the Lindbergs' loan, on September 17, 1996, the Lindbergs ordered an initial payoff statement through the automated telephone system and requested that it be sent by facsimile to an Arizona telephone number.  The statement included a $10 fax fee.  Phillip Lindberg testified at his deposition that he requested this payoff statement because he was considering refinancing his loan although he later chose not to refinance.  This deposition was attached to defendant's motion.  On June 23, 1997, a second payoff statement was ordered on the Lindbergs' account through the telephone system, but this time the caller requested that the statement be mailed.  The statement included the earlier $10 fax fee, no cost for mailing, and a $15 quote fee.  Thereafter, in the next few months, the Lindbergs or a representative ordered three more payoff statements and requested that two of the statements be faxed.  By November 11, 1997, when the Lindbergs paid off their loan, the Lindbergs or a representative had requested in total five payoff statements and had received by request three of the statements by facsimile.  The Lindbergs paid the $15 quote fee imposed as a result of their request for multiple payoff statement and the $30 fax fee for the three faxed statements, when they paid off their loan.

Defendant also attached to its motion the deposition transcripts of Gary and Stephen Newland, the attorneys responsible for handling the sale of the Krause and Lindberg homes and the payoff of their loans.  Both attorneys confirmed that they or members of their law firms had ordered payoff statements consistent with defendant's computer records.  Gary Newland talked with Patricia Krause  about the fax and quote fees on the payoff statement before the real estate closing and Krause questioned the fees.  Prior to the Lindbergs' closing, Stephen Newland had similar discussions with Phillip Lindberg about the fax and quote fees, and Lindberg questioned the fees.  Nevertheless, both the Krauses and Lindbergs paid the fees as part of their payoff of their mortgages in full.

In response to defendant's motion for summary judgment, plaintiffs did not contest that defendant disclosed the fax and quote fees prior to plaintiffs ordering the payoff statements at issue.  Plaintiffs argued that there were general issues of material fact that the quote and fax fees were prepayment penalties, were not authorized by the mortgages or notes, and were unfair practices under the Fraud Act. 

Following oral arguments, the trial court granted defendant's motion for summary judgment on each count.  The court first concluded that the fax and quote fees did not constitute prepayment charges and did not breach the contracts between plaintiffs and the defendant.  The court found that the fees are not solely charged when a mortgagor attempts to pay his loan in full before maturity, but could be incurred independent of a prepayment.  The court also rejected plaintiffs' argument that these fees were not proper under the mortgages and notes.  The court found that the fees were permissible service fees that arose from defendant's management of the mortgage.  Regarding plaintiffs' claim of a violation of the Fraud Act, the court found that defendant disclosed the fees in advance, plaintiffs agreed to pay them, and defendant rendered a service for the fees.  The court therefore failed to find any unfair or deceptive practices.  The court also found that, under the voluntary payment doctrine, plaintiffs' payment of the quote and fax fees barred their breach of contract claim.  The court lastly rejected plaintiffs' restitution claim because of the express contract between plaintiffs and defendant and the lack of evidence of any unfair practices.  Plaintiffs now appeal.

ANALYSIS

Summary judgment shall only be granted if the pleadings, depositions, and admissions, together with the affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  735 ILCS 5/2-1005(c) (West 1998).  While "the summary judgment procedure is to be encouraged as an aid in the expeditious disposition of a lawsuit [citation], it is a drastic means of disposing of litigation and therefore should be allowed only when the right of the moving party is clear and free from doubt. [Citations.]"  
Purtill v. Hess
, 111 Ill. 2d 229, 240, (1986).  We review the circuit court's grant of a motion for summary judgment 
de novo
.  
Ruane v. Amore
, 287 Ill. App. 3d 465, 473 (1997).

I. Quote and Fax Fees Were Not Prepayment Penalties

Plaintiffs first argue that the court erred in finding that quote and fax fees did not constitute unauthorized prepayment penalties.  According to plaintiffs, these fees only arise in the context of a prepayment and these fees cannot be avoided when a mortgagor pays his loan in full before maturity.  A charge is a prepayment penalty if the "charge imposed at the time of prepayment [was one] that would not [have been] imposed if the note were paid at maturity instead of at an earlier date." 
 Goldman v. First Federal Savings & Loan Ass'n
, 518 F.2d 1247, 1252 (7th
 Cir. 1975).  Two cases have recently examined whether fax and quote fees, similar to the ones presented here, constitute prepayment charges under 
Goldman
.  See 
Cappellini v. Mellon Mortgage Co.
, 991 F. Supp. 31 (D. Mass. 1997); 
Colangelo v. Norwest Mortgage, Inc.
, 598 N.W.2d 14 (Minn. App. 1999).  We find these cases instructive.

In 
Capellini
, plaintiff claimed that a $15 fax fee and a $ 25 duplicate statement fee for a payoff statement should be classified as a prepayment fee.  Like the fees in this case, the fees in 
Capellini
 were not contained in the plaintiff's mortgage or note and were paid when plaintiff paid off the loan.  Rejecting the plaintiff's argument that the fees constituted a prepayment penalty, the court found that the fees are not assessed only in the context of prepayment but are routinely assessed in other circumstances unrelated to prepayment.  
Cappellini
, 991 F. Supp. at 38.  The court concluded that "fax and statement fees are not prepayment charges, but are rather charges for special services outside of the basic service agreement provided to the borrower by [the lender] with respect to-but not exclusively related to the prepayment of-a loan." 
 Cappellini
, 991 F. Supp. at 38.  

The court, in 
Colangelo
, reached the same conclusion with respect to a $10 fax charge.  It found that the borrower is not required to pay the $10 fee as a condition of paying off the mortgage loan because the borrower does not even need to acquire a payoff statement to pay the loan in full and because the fee could be assessed outside the context of prepayment.  
Colangelo
, 598 N.W.2d at 16-17.  The court held the charge was a permissible fee for special services.  
Colangelo
, 598 N.W.2d at 17.

In this case, we likewise conclude that the fax and quote fees do not constitute prepayment charges.  Graf's affidavit establishes that the fax and quote fees can be charged for reasons other than prepayment.  A borrower, for instance, may request more than one payoff statement for financial purposes, for refinancing options, or for bankruptcy or divorce.  The borrower may choose to have one of these payoff statements sent by facsimile and thus incur both a quote and a fax fee even though there is no prepayment of the loan.  In addition, a borrower does not even need to obtain a payoff statement to prepay the mortgage loan or, on the other hand, may choose to prepay after requesting only one statement.  "The fact that a cost is imposed on the borrower at the time the loan is prepaid does not render the cost a penalty; a charge is a prepayment penalty if the cost 'would not be imposed if the note were paid at maturity instead of an earlier date.' " 
 Colangelo
, 598 N.W.2d at 17, quoting 
Goldman
, 518 F.2d at 1252.  In this case, the record reflects that the fax and quote fees defendant charged are not exclusively related to the prepayment of the loan but may be charged for a number of unrelated r
easons.  Here, these charges would be imposed whether the notes were paid at maturity or at an earlier date and therefore fail to satisfy the definition of a prepayment penalty under 
Goldman
.  
Goldman
, 518 F.2d at 1252.  
Based on this record, there is no genuine issue of material fact that the quote and fax fees are charged for a number of reasons unrelated to prepayment of the loan.  We agree with the trial court's finding that the fees are service charges that are not peculiarly associated with prepaying a loan.  As noted by the trial court:

"First, the fees are not assessed at the time of early payment, but rather at the time the services are rendered.  It is possible to prepay without incurring these fees so long as the mortgagor only requests only one statement and has it sent by mail.  They may prepay without incurring these [charges] at all. * * * A party may request a payoff statement and decide not to prepay, but the service charge would still remain."

The undisputed facts support the conclusion that these charges were not prohibited "prepayment charges."  A prepayment penalty is one that is peculiarly associated with prepayment alone, it is assessed at the time of prepayment, and it would not be charged if the loan was paid at maturity.  
Goldman,
 518 F.2d at 1252.  Fees that could be imposed in connection with a payment in full at maturity, fees that are an addition to the loan principle, or fees that must be paid regardless of whether the loan is prepaid do not constitute prepayment penalties. 
 Currie v. Diamond Mortgage Corp.
,
 859 F.2d 1538, 1541 (7th
 Cir. 1988); 
Ortegel v. ITT Thorp Corp
, 210 Ill. App. 3d 669, 676 (1991).

Under 
Goldman
, these fees do not constitute unauthorized prepayment charges.  As the trial court concluded on undisputed facts, facsimile and quote fees can be incurred regardless of whether a particular loan is being prepaid.  For example, at least one of the facsimile fees was completely unrelated to the payoff of the loan.  Phillip Lindberg incurred a $10 facsimile fee almost a year before payoff, when he was considering an earlier refinancing which he never completed. It is also possible to prepay without incurring any of these fees.  Defendant receives prepayments where no payoff statement was ever ordered, where only mailed statements were used, or
 where rather than multiple requests only one payoff statement was requested.  The quote and facsimile fees are paid by borrowers who prepay after choosing to request multiple statements and/or after ordering facsimile delivery of statements.

These service charges are not incurred only when a borrower is paying a loan prematurely.  They may well be incurred in connection with payment at maturity.  We also note the fees are incurred at the time that the service is rendered, not at the time of prepayment.  The facsimile charge is imposed when the statement is sent, and only if sent by facsimile.  The quote fee is imposed only when the first written duplicate payoff statement is sent.  Thus, the record supports the conclusion that the facsimile fees and quote fees are not peculiarly associated with prepayment alone, but rather are assessed because defendant performed a service.

Plaintiffs additionally argue that the fax and quote fees are prepayment penalties because, in order to close on the sale of their home, it was necessary for them to obtain a written payoff statement.  Even assuming that plaintiffs' attorneys required a written payoff statement to close on the sale of plaintiffs' homes and properly pay off the mortgages, this fact does not make the fax and quote fees a prepayment penalty.  Defendant did not assess these fees because plaintiffs paid their loans early but rather the fees were incurred, because plaintiffs requested multiple payoff statements and requested that the payoff statements be faxed rather than mailed.  As noted, the Lindbergs incurred one fax fee before they even contemplated selling their home, when they requested defendant to 
fax
 a payoff statement because they were considering refinancing their loan.  Thus, defendant charged these fees not as a prepayment penalty but for the extra service of providing more than one payoff statement to plaintiffs and for the extra service of faxing the statement to the plaintiffs, rather than mailing them.  See 
Cappellini
, 991 F. Supp. 31, 38.  (fax and statement fees are not prepayment charges, but charges for special services.)

Plaintiffs cite 
Rumford v. Countrywide Funding Corp.
, 287 Ill. App. 3d 330 (1997), as controlling.  However, we find 
Rumford
 factually distinguishable.  In 
Rumford
, when plaintiff paid off her mortgage, the mortgagee charged her a $50 "reconveyance/statement fee" and a $15 "prepayment penalty or other charge."  These fees were first imposed on plaintiff as part of the balance she needed to pay the account in full on her mortgage.  They were not imposed as the result of her requesting special services.  Plaintiff sued defendant for breach of contract and violation of the Fraud Act, because her mortgage and note prohibited any prepayment charge.  Plaintiff attached to her complaint her mortgage, note, and the payoff statement which specifically listed the "$15 prepayment penalty or other charge."  Defendant moved for summary judgment and attached the affidavit of its first vice-president, who stated that the charges were not prepayment charges but were charges for preparing and faxing the payoff statement.  
Rumford
, 287 Ill. App. 3d at 332.  Based on this affidavit, the trial court granted defendant's motion.  The appellate court reversed.  It found that although the vice-president's affidavit explained the charges, it only contradicted the payoff statement attached to the complaint, which specifically referred to a prepayment penalty.  This contradiction between the affidavit and the payoff statement, the court determined, created fact questions as to exactly what the charges were and whether the vice-president was telling the truth about the charges listed on the payoff statement, thus precluding summary judgment.  
Rumford
, 287 Ill. App. 3d at 335-36.

Here, by contrast, the challenged fees listed on the payoff statement describe the type of fees at issue as quote and fax fees.  Unlike 
Rumford
, there is no dispute of facts in this case as to what  fees the Krauses and Lindbergs were charged: fees were charged for expedited delivery by facsimile requested by the plaintiffs and fees were charged for duplicate statements requested by the plaintiffs.  The payoff statement therefore does not contradict Graf's affidavit but is consistent with her testimony about the fax and quote fees charged to plaintiffs.  Unlike 
Rumford
, the payoff statement in this case does not refer to a "prepayment penalty" and plaintiffs do not dispute that the charges at issue represent quote and
 fax fees imposed at the time the services requested by plaintiffs were rendered.  Plaintiffs claim that even though defendants disclosed the quote and fax fees, and imposed the fees at the time they were incurred for services requested, the nature of the fees demonstrates that they are unauthorized prepayment penalties.  In 
Rumford
, summary judgment was not proper because of the contradictions in evidence over what type of charges were listed on the payoff statement.  In this case, plaintiffs have not shown any similar contradiction of evidence within the record
.

Plaintiffs also rely on 
Sandlin v. Shapiro & Fishman
, 919 F. Supp. 1564 (M.D. Fla. 1996).   In 
Sandlin
, the husband and wife borrowers were in default on their mortgage and the lender initiated collection proceedings through an attorney.  The attorney sent the borrowers a letter with the payoff figure on the mortgage and added a $60 "payoff fee" to the balance of the loan.   The borrowers had never requested a payoff statement or any other document stating the amount owed on the mortgage.  The borrowers then sued the attorney and the mortgage company and claimed that the "payoff fee" constituted an unauthorized prepayment fee in violation of the terms of the mortgage.  Denying defendants' motion to dismiss, the court found the payoff fee could be a prepayment penalty because the borrower is entitled to be informed of the amount due on the loan without incurring a fee.  
Sandlin
, 919 F. Supp. at 1568.

Unlike the fee charged in 
Sandlin
, the fees at issue here were only charged after the plaintiffs made specific requests of defendant to provide them with multiple payoff statements and to fax some of these statements.  The plaintiffs in 
Sandlin 
never requested any payoff statements from their  mortgage company or any other services in relationship to their mortgage.  Rather, in 
Sandlin
, the mortgage company's collection attorney decided himself to charge a "payoff fee" when he informed the plaintiffs the amount due on the loan.  In contrast to this unsolicited fee
, which was essentially for information on the balance due on the loan, the fax and quote fees in this case were charged for special services that plaintiffs requested.  Moreover, plaintiffs could have obtained the information owed on their loan by mail or by phone for no additional service fee.  It is only when multiple payment statements are requested or payment statements are requested by fax that additional service fees are imposed.  Therefore, we find 
Sandlin
 distinguishable.     

Plaintiffs next argue that even if the quote and fax fees do not constitute prepayment penalties,  the mortgages and notes do not authorize defendant to charge these fees.  Plaintiffs cite two principles of contract construction as authority.  The first principle, 
expressio unius est exclusio alterius
, provides that the mention of one thing excludes another.  Plaintiffs argue because the contracts provide certain service-related functions and fees for these services, any other fees not listed in the mortgages or notes are not authorized.  Plaintiffs note that the mortgages and notes do not reference quote and fax fees.  Defendant points out that the contracts also prohibit certain charges, such as prepayment charges, charges for holding and applying escrow funds, and charges for release of the lien after payment, but do not prohibit defendant from charging quote and fax fees.  Because quote and fax fees are not expressly prohibited in the contracts, defendant suggests that application of the maxim 
expressio unius est exclusio alterius
 can be interpreted as allowing it to charge for these services.

However, courts resort to tools of contract construction when the terms of the contract are ambiguous. 
 Pritcher v. Principal Mutual Life Insurance
, 93 F.3d 407, 418 (7th
 Cir. 1996).  In this case, the mortgages and notes are not ambiguous.  They list certain fees that are permitted and certain fees that are prohibited.  There is no language in the contracts that prohibits the imposition of a charge for services provided outside the contracts.  Moreover, 
the maxim of  
expressio unius est exclusio alterius 
"works as a double-edged sword" and may support either plaintiffs' or defendant's position as noted by the court in 
Colangelo
:

"Just as the mortgages mention specific amounts that are required to be paid * * * the

mortgage instruments list specific charges that cannot be charged. * * * Thus, under the maxim of 
expressio unius est exclusio alterius
, those fees not specifically prohibited by the mortgage instruments are, by implication, authorized.  Because the fax fee is not specifically listed as a prohibited fee, by implication [the lender] is not barred from imposing the fee."  
Colangelo
, 598 N.W.2d at 18.

Here, the contracts specifically address certain prohibited charges, but do not mention facsimile fees or quote fees, therefore, applying the maxim, it could equally be argued that facsimile fees and quote fees are not prohibited.  We decline to use this maxim as a basis to find that the mortgages and notes prohibit defendant from charging quote and fax fees.  

The plaintiffs also rely on the maxim 
contra proferentum
, which instructs a court to

interpret the language of a contract against the drafter when the language of a contract is ambiguous or susceptible to more than one meaning.  See Restatement (Second) of Contracts § 206 (1981).  Again, this maxim only applies when a contract term is ambiguous. 
 Ford v. Dovenmuehle Mortgage, Inc.
, 273 Ill. App. 3d 240, 248 (1995).  We do not find plaintiffs' mortgages and notes ambiguous.  We note that the court in 
Cappellini
 rejected this very argument and concluded that this maxim could not be used to override the express agreement between the mortgage company and the borrower.  
Cappellini
, 991 F. Supp. at 39-40.  The court reasoned that because notes and mortgages last for long periods of time, it would be unreasonable to require each mortgage company to anticipate in the initial loan documents the type of services that a borrower may request and the amount that the lender can charge for such services.  
Cappellini
, 991 F. Supp. at 39-40. We do not believe that plaintiffs' mortgages and notes entitled them to receive free of charge any service not specifically referenced in the contract.  Therefore, we reject plaintiffs' argument that the mortgages and notes preclude defendant from charging quote and fax fees.

Plaintiffs next argues that, by charging the quote and fax fees, defendant breached its duty of  good faith.  Plaintiffs claim that the quote and fax fees that defendant charges violates its duty to act in good faith and to permit the borrower to prepay its loan.  Plaintiffs could have avoided these fees by accepting the quote by phone or mail rather than requiring that the quote be faxed and by making one rather than multiple quote requests.  Moreover, plaintiffs fail to recognize that before they incurred each quote and fax fee, defendant disclosed that it would be charging for the service ordered.  Defendant charged these fees for specific services that it performed on request of the borrower or his or her representative.  The fees imposed were exactly as defendant stated they would be and were not misrepresented or hidden.  Therefore, defendant did not breach its duty to act in good faith.  Based on this record we find no genuine issue of material fact regarding plaintiffs' claimed breach of contract.  The trial court properly granted summary judgment.

II. Consumer Fraud Act

Plaintiffs next argue that the trial court erred in granting summary judgment on the claim under the Fraud Act.  Plaintiffs argue that the quote and fax fees are unfair practices and violate section 2 of the Fraud Act.  815 ILCS 505/2 (West 1998).  
Under the Fraud Act, a plaintiff must allege and prove the following elements to sustain a cause of action: (1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive act; and (3) that the deceptive act occurred during the course of trade or commerce. 
 Connick v. Suzuki Motor Co.
,
 
174 Ill. 2d 482, 501 (1996).

In 
Stern v. Norwest Mortgage, Inc.
, 179 Ill. 2d 160, 169 (1997), the supreme court addressed whether a mortgage company's imposition of an escrow waiver fee constituted a violation of the Act.  The court found no violation because the mortgage company did not intend "to deceive or defraud plaintiffs or be unfair to plaintiffs." 
 Stern
, 179 Ill. 2d at 169.  Although the court had found that the Mortgage Escrow Account Act (765 ILCS 910/1 
et
 
seq
. (West 1992)) had prohibited the fee, the mortgage company had simply made an "honest mistake" and did not conceal, suppress, or hide any material facts with the intent that the consumer rely on such facts.

Similarly, in this case, defendant did not conceal, suppress, or hide any material facts.  The undisputed evidence in the record established that defendant disclosed to plaintiffs the fees at issue before plaintiffs chose the additional services provided and before charging plaintiffs for these services.  Defendant disclosed these fees through its automated phone system, through its customer service representatives, and through its payoff statements, which stated that any request for an additional quote would be subject to a fee.  Facsimile fees were similarly disclosed.  Plaintiffs cannot point to any evidence of defendant's intent to deceive plaintiffs or any evidence of defendant's intent for plaintiffs to rely on some undisclosed or hidden material fact.  Defendant charged the quote and fax fees with full and accurate disclosure.  Consequently, the trial court properly entered summary judgment against plaintiffs on the consumer fraud count.

III. Restitution

Plaintiffs lastly argue that they have a viable claim for restitution because defendant unlawfully charged the quote and fax fees.  Plaintiffs base their restitution claim on defendant's alleged "tortious conduct that violated the Illinois Consumer Fraud Act."  See 
Peddinghaus v. Peddinghaus
,
 
295 Ill. App. 3d 943, 949 (1998) (theory of unjust enrichment may be based on tortious conduct).  We have already concluded that the trial court correctly granted summary judgment on the consumer fraud count of plaintiffs' complaint.  Plaintiffs' claim for restitution is based on this same alleged fraudulent conduct.  For the reasons previously discussed, the trial court properly entered summary judgment against plaintiffs' claim for restitution which is based on the same conduct alleged in the consumer fraud count. 

Having found that the trial court properly granted summary judgment in favor of defendant and against plaintiffs on each count of plaintiffs' complaint, we need not address whether plaintiffs' payment of the fees at issue and the voluntary payment doctrine provide a separate basis entitling defendant to summary judgment.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.   

RAKOWSKI and GALLAGHER, JJ., concur.