937 A.2d 210

### Andrew BEDNAR

v.

### PROVIDENT BANK OF MARYLAND, INC.

No. 142 Sept. Term, 2006.

Court of Appeals of Maryland.

Dec. 13, 2007.

M. Albert Figinski (John A. Pica, Jr. and Thomas P. Kelly of Law Offices of Peter G. Angelos, PC, Baltimore), on brief, for appellants.

Brian L. Moffet (Dennis P. McGlone of Gordon, Feinblatt, Rothman, Hoffberger & Hollander, LLC, Baltimore), on brief, for appellee.

Argued Before BELL, C.J., RAKER, HARRELL, BATTAGLIA, GREENE, JOHN C. ELDRIDGE (Retired, Specially Assigned), and ALAN M. WILNER (Retired, Specially Assigned), JJ.

JOHN C. ELDRIDGE, Judge (Retired, Specially Assigned).

The issue in this case is whether the Circuit Court for Baltimore City erred in granting summary judgment to a bank that collected closing costs from a borrower solely because the borrower prepaid his loan. The petitioner, Andrew

Bednar, was a consumer borrower who obtained a second mortgage loan from the respondent, Provident Bank of Maryland, Inc.[1] The Circuit Court granted summary judgment to Provident, deciding that the bank did not violate the "Credit Grantor Closed End Credit Provisions" of Maryland Code (1975, 2005 Repl.Vol.), § 12–1009(e) of the Commercial Law Article, hereafter referred to as "CLEC." Section 12–1009(e) provides that a "credit grantor may not impose any prepayment charge." Because the Circuit Court determined that Provident did not violate CLEC, it also granted summary judgment in favor of Provident on Bednar's second count, alleging that Provident violated the Maryland Consumer Protection Act, §§ 13–101 *et seq.* of the Commercial Law Article. We shall reverse and hold that the Circuit Court erred in granting summary judgment in favor of Provident.

## I.

On August 29, 2003, Andrew Bednar obtained a second mortgage from Provident in the amount of $17,000.00 at an annual interest rate of seven percent. The Loan Note and Security Agreement signed by Bednar stated that Provident Bank "elects to make this loan under Subtitle 10 of Title 12 of the Commercial Law Article of the Annotated Code of Maryland and federal law." In addition to signing the Loan Note and Security Agreement, Bednar also signed a "Closing Costs Waiver Certificate." The Waiver Certificate provided as follows:

"As a condition to receiving a waiver of closing costs, you agree *not* to close the account for a minimum period of three years from the date of settlement. If the account is closed during the first three year period, the waiver will be rescinded and the closing costs will be added to the balance

---

**1.** Maryland Code (1975, 2005 Repl.Vol.), § 12–1001(f) of the Commercial Law Article, defines a "consumer borrower" as "an individual receiving a loan or other extension of credit under this subtitle for personal, household, or family purposes or an individual receiving a commercial loan or other extension of credit for any commercial purpose not in excess of $75,000, secured by residential real property."

of the account and will be due and payable immediately, without notice or demand, to Provident Bank."

Bednar did not pay any loan closing costs at the settlement. The Settlement Statement in connection with Bednar's loan indicated that the closing costs were "paid by bank," in other words, paid by Provident. The closing costs amounted to $681.00 and, as reported on the Settlement Statement, included:

| | |
|---|---|
| Appraisal Fee | $400.00 |
| Abstract/Title Search | $115.00 |
| Recordation Fees | $ 40.00 |
| City/County Stamps | $ 85.00 |
| Release Fee | $ 30.00 |
| Flood Certification | $ 11.00 |

Two years after the closing date, on July 19, 2005, Bednar refinanced with another lender and fully prepaid his Provident loan. In addition to the outstanding loan principal, Provident also collected $681.00 from Bednar at the settlement of his refinanced loan. At the time of the closing, Provident did not inform Bednar that he was paying a charge in addition to the remaining principal.

On December 14, 2005, Bednar filed, in the Circuit Court for Baltimore City, a class action complaint against Provident, and on March 8, 2006, he filed an amended class action complain t. The amended class action complaint alleged that, in collecting the additional $681.00, Provident violated the Credit Grantor Closed End Credit Provisions (CLEC), §§ 12–1001 *et seq.* of the Commercial Law Article. Section 12–1009 provides, in pertinent part, as follows:

"(a) *Consumer borrower's right to prepay.*—A consumer borrower may prepay a loan in full at any time.

\* \* \*

"(e) *Prepayment charges prohibited.*—In connection with any prepayment of any loan by a consumer borrower, the credit grantor may not impose any prepayment charge."

Bednar also claimed that, by violating CLEC, Provident engaged in "unfair or deceptive trade practices" and therefore violated the Consumer Protection Act, §§ 13–301(1), (3), and (9). These sections provide as follows:

"**§ 13–301. Unfair or deceptive trade practices defined.**

Unfair or deceptive trade practices include any:

"(1) False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers;

\* \* \*

"(3) Failure to state a material fact if the failure deceives or tends to deceive;

\* \* \*

"(9) Deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with:

(i) The promotion or sale of any consumer goods, consumer realty, or consumer service;

(ii) A contract or other agreement for the evaluation, perfection, marketing, brokering or promotion of an invention; or

(iii) The subsequent performance of a merchant with respect to an agreement of sale, lease, or rental. . . ."

Although not at issue on this appeal, Bednar's complaint also alleged that Provident's $681.00 charge violated the Interest and Usury laws, §§ 12–101 *et seq.* of the Commercial Law Article, and the Secondary Mortgage Loan Law, §§ 12–401 *et seq.* of the Commercial Law Article.

On March 29, 2006, Provident moved to dismiss Bednar's amended class action complaint; the Circuit Court granted the motion in part and denied it in part. The court dismissed the Interest and Usury laws and the Secondary Mortgage Loan Law causes of action, but denied Provident's motion to dismiss

the causes of action under CLEC and the Consumer Protection Act.

Provident subsequently filed a motion for summary judgment with respect to the causes of action under CLEC and the Consumer Protection Act. Bednar filed both an opposition to Provident's motion and a cross-motion for summary judgment. In support of its motion for summary judgment, Provident contended that the "deferred payment of closing costs," as in this case, "has been approved by the Maryland Commissioner of Financial Regulation and all other state and federal regulatory agencies that have addressed this issue." Specific ally, Provident relied on three letters from the Office of the Maryland Commissioner of Financial Regulation which appeared to approve a charge like the one imposed by Provident in this case. In one letter, the Deputy Commissioner explained as follows:

"We do not interpret the later assessment of those fees, only if the loan is paid off before a certain date, as a prepayment penalty. Rather, we view the waiver of the fees as more in the nature of a benefit conferred upon borrowers who have not paid off their loan before the predetermined period of time."

Provident also relied upon letters from the State of New York Banking Department and the National Credit Union Administration to support its imposition of the $681.00 charge.

After holding a hearing on the motions, and reviewing memoranda, affidavits and exhibits in support of the motions, the Circuit Court filed a written opinion and entered a separate judgment which granted Provident's motion for summary judgment and denied Bednar's cross-motion. The Circuit Court in its opinion concluded that "Provident charged and disclosed to the Plaintiff at the time of [the] loan closing fees in the amount of $681.00 in accordance" with § 12–1005(b) of the Commercial Law Article.[2] In addition, the Circuit Court

2. Section 12–1005(b) of the Commercial Law Article provides as follows:

determined that Provident did not violate CLEC by "recapturing the closing costs upon the Plaintiff's prepayment of his loan because the costs were imposed at the time of loan closing, not at the time of prepayment of the loan...." The Circuit Court's opinion also stated that, "[i]n light of the Court's review of the relevant loan documents and statutes, and its independent findings as set forth above, the court has chosen not to consider the interpretative letters of the Maryland Commissioner of Financial Regulation, or those of any other regulatory body ...." Finally, the Circuit Court decided, based solely on its determination that Provident did not violate CLEC, that Provident did not violate the Consumer Protection Act, §§ 13–101 *et seq.* of the Commercial Law Article.

Bednar filed a notice of appeal from the Circuit Court's judgment. Before any consideration of the case by the Court of Special Appeals, Bednar petitioned this Court for a writ of certiorari. Provident both answered the petition and filed a cross-petition for a writ of certiorari. This Court granted Bednar's petition and denied Provident's cross-petition. *Bednar v. Provident Bank*, 397 Md. 396, 918 A.2d 468 (2007).

## II.

Bednar argues that the Circuit Court erred in granting summary judgment in favor of Provident because Provident's charge of $681.00 violated § 12–1009 of CLEC. Bednar spe-

---

"(b) *Service fees.*—Reasonable fees for services rendered or for reimbursement of expenses incurred in good faith by the credit grantor or its agents in connection with the loan, including:

    (1) Commitment fees;

    (2) Official fees and taxes;

    (3) Premiums or other charges for any guarantee or insurance protecting the credit grantor against the borrower's default or other credit loss;

    (4) Costs incurred by reason of examination of title, inspection, recording, and other formal acts necessary or appropriate to the security of the loan;

    (5) Filing fees;

    (6) Attorney's fees; and

    (7) Travel expenses."

cifically relies on § 12–1009(a), which permits a consumer borrower to "prepay a loan in full at any time," and § 12–1009(e), which prohibits the imposition of any prepayment charge "[i]n connection with the prepayment of any loan by a consumer borrower." According to Bednar, the language of CLEC is clear, unambiguous, and expressly forbids the $681.00 charge imposed by Provident. Regarding the Consumer Protection Act cause of action, Bednar points out that the Circuit Court's grant of summary judgment was based solely on the court's "errant determination and ruling that Provident did not violate the CLEC." (Petitioner's brief at 28).

Bednar further argues, contrary to the Circuit Court's determination that the $681.00 charge was imposed at the earlier August 2003 loan settlement, that the $681.00 charge was "first and only imposed on [Bednar] at the July 2005 loan prepayment." (Petitioner's brief at 9). Thus, Bednar emphasizes that the Settlement Statement recites that all loan closing costs were "paid by bank"—*i.e.*, paid by Provident. At no time during the August 2003 settlement were any costs or fees associated with settling the loan imposed on or paid by Bednar. In addition, Bednar contends that the Waiver Certificate signed by him, indicating that he agreed to keep the loan open for three years, is unenforceable under CLEC, §§ 12–1023(b)(3) and 12–1023(b)(4)(i) of the Commercial Law Article. Section 12–1023(b)(3) states as follows:

> "Except as expressly allowed by law, an agreement, note or other evidence of a loan may not contain a provision by which the borrower waives any right accruing to the borrower under this subtitle."

Section 12–1023(b)(4)(i) provides as follows:

> "Any clause or provision in an agreement, note, or other evidence of a loan that is in violation of this subsection shall be unenforceable."

According to Bednar, "[a]s a matter of law, Provident's Waiver Certificate is void and unenforceable and cannot justify Provident's violation of" CLEC. (Petitioner's brief at 15).

Finally, Bednar asserts that, in failing to disclose that the $681.00 charge was a prepayment charge and thus unlawful, Provident violated Maryland's Consumer Protection Act, §§ 13–301(1), (3), and (9) of the Commercial Law Article. According to Bednar, Provident made "other representations of any kind" within the meaning of § 13–301(1), failed to state a material fact in violation of § 13–301(3), and omitted a material fact in violation of § 13–301(9).

Provident responds that the $681.00 was not a prepayment charge prohibited by § 12–1009(e). Provident labels its imposition of the $681.00 charge, at the time of Bednar's prepayment, as a "recapturing" of the closing costs. Provident states that CLEC authorizes it to charge and collect third party closing costs and governmental fees, and that the statute does not impose any time limit on the collection of such costs and fees.

Since there is no statutory time limit on collecting closing costs, Provident asserts that conditioning the imposition of the $681.00 on the prepayment of the loan is acceptable. According to Provident, the prohibition of a prepayment charge in § 12–1009(e) should not be construed to "prohibit the imposition of 'any charge at all' at prepayment, but rather [to] prohibit[ ] only the imposition of" charges which are not authorized by other statutory provisions. (Respondent's brief at 13).

Provident also argues that the Circuit Court correctly held that, because Provident did not impose an impermissible prepayment charge, it did not violate the Consumer Protection Act. Alternatively, Provident contends that, even if there were a violation of CLEC, Provident did not violate the Consumer Protection Act because Provident did not misrepresent a material fact. Provident points out that § 13–301(3) prohibits the failure to state a "material fact." According to Provident, a failure to state that the charge imposed on Bednar was illegal was not the omission of a "material fact," but instead was a failure to inform Bednar of the applicable law. Provident asserts that it "was under no obligation to make any

statements concerning the applicable law...." (Respondent's brief at 31).

## III.

In considering a trial court's grant of a motion for summary judgment, this Court reviews the record in the light most favorable to the non-moving party. *Rhoads v. Sommer*, 401 Md. 131, 148, 931 A.2d 508, 518 (2007) ("We review the record in the light most favorable to the non-moving party and construe any reasonable inferences that may be drawn from the facts against the moving party"); *Harford County v. Saks*, 399 Md. 73, 82, 923 A.2d 1, 6 (2007) (In reviewing a trial court's decision on a motion for summary judgment, "we seek to determine whether any material facts are in dispute and, if they are, we resolve them in favor of the non-moving party"); *Lovelace v. Anderson*, 366 Md. 690, 695, 785 A.2d 726, 728 (2001) (In reviewing a grant of the defendants' motions for summary judgment, "we must review the facts, and all inferences therefrom, in the light most favorable to the plaintiffs"). If no material facts are in dispute, this Court must determine whether the Circuit Court correctly entered summary judgment as a matter of law. *Harford County v. Saks, supra*, 399 Md. at 82, 923 A.2d at 6; *Property and Casualty Insurance Guaranty Corporation v. Yanni*, 397 Md. 474, 480–481, 919 A.2d 1, 5 (2007); *Standard Fire Insurance Co. v. Berrett*, 395 Md. 439, 451, 910 A.2d 1072, 1079 (2006); *Ross v. State Board of Elections*, 387 Md. 649, 659, 876 A.2d 692, 698 (2005). In the present case, in connection with the motions for summary judgment and responses thereto, both Bednar and Provident "agree[d]" that "there is no dispute of material fact."

In addition, it is the "established rule of Maryland procedure that, '[i]n appeals from grants of summary judgment, Maryland appellate courts, as a general rule, will consider only the grounds upon which the [trial] court relied in granting summary judgment.'" *Lovelace v. Anderson*, 366 Md. 690, 695, 785 A.2d 726, 729 (2001), quoting *PaineWebber v. East*, 363 Md. 408, 422, 768 A.2d 1029, 1036 (2001). *See*

*also, e.g., Property & Casualty Insurance Guaranty Corporation v. Yanni, supra,* 397 Md. at 480–481, 919 A.2d at 5 ("On appeal from an order entering summary judgment, we review 'only the grounds upon which the trial court relied in granting summary judgment' ") (some internal quotation marks omitted); *Standard Fire Insurance Co. v. Berrett, supra,* 395 Md. at 451, 910 A.2d at 1079; *Ross v. State Board of Elections, supra,* 387 Md. at 659, 876 A.2d at 698; *Eid v. Duke,* 373 Md. 2, 10, 816 A.2d 844, 849 (2003).

■ The above-quoted rule concerning appellate review of summary judgments is particularly important with regard to the parties' arguments on the Consumer Protection Act count. The Circuit Court's grant of summary judgment on the asserted cause of action under the Consumer Protection Act was based entirely upon the court's holding that Provident did not violate the CLEC statute. The Circuit Court did not reach any of the parties' arguments, concerning the Consumer Protection Act, which were independent of CLEC. Consequently, to the extent that either side in this Court has advanced arguments regarding the Consumer Protection Act which are not entirely dependent upon the presence or absence of a violation of CLEC, we do not reach such arguments. They may be raised in the Circuit Court after our remand.

## IV.

■ It is undisputed that whether Bednar would be required to pay the $681.00 charge was entirely dependent upon whether he prepaid the Provident loan within three years. If Bednar prepaid the loan within three years, he was required to pay the charge. If he did not prepay the loan in three years, he was not required to pay the charge. Regardless of what else the $681.00 charge may have been, or how the amount was calculated, it was plainly a "prepayment charge." Section 12–1009(e) of the Commercial Law Article unambiguously and flatly mandates that, "[i]n connection with *any* prepayment of *any* loan by a consumer borrower, the credit grantor may not impose *any* prepayment charge." (Emphasis

added). *"Any"* prepayment and *"any"* prepayment charge does not mean only "some" prepayments or "some" prepayment charges.

For this Court to read into § 12–1009(e) an exception, if the amount of the prepayment charge was based upon the amount of permissible closing costs which had earlier been "waived" or paid by the credit grantor, would be to violate the most basic principle of statutory construction. *See BAA v. Acacia Mutual Life Insurance Co.,* 400 Md. 136, 151, 929 A.2d 1, 10 (2007) (" 'We neither add nor delete words to a clear and unambiguous statute to give it a meaning not reflected by the words the Legislature used, or engage in forced or subtle interpretation in an attempt to ... limit the statute's meaning,' " quoting *Taylor v. NationsBank, N.A.,* 365 Md. 166, 181, 776 A.2d 645, 654 (2001)), and cases there cited. *See also, Stoddard v. State,* 395 Md. 653, 668, 911 A.2d 1245, 1254 (2006) ("When interpreting a statute, the 'ordinary, popular understanding' of the English language dictates interpretation of its terminology,' " quoting *Walzer v. Osborne,* 395 Md. 563, 572, 911 A.2d 427, 432 (2006)); *Blake v. State,* 395 Md. 213, 224, 909 A.2d 1020, 1026 (2006).

Other jurisdictions reviewing the matter of impermissible prepayment charges or penalties have similarly held that, when a charge is conditioned on prepayment, it constitutes a prepayment charge. In *Goldman v. First Federal Savings and Loan Association,* 518 F.2d 1247 (7th Cir.1975), the court set forth a test to determine whether the payment of unearned interest was a prepayment penalty. Justice Stevens, then a judge of the United States Court of Appeals for the Seventh Circuit, explained for the court as follows (*Goldman,* 518 F.2d at 1252):

"The proper test, it seems to us, is whether there is a charge imposed at the time of prepayment that would not be imposed if the note were paid at maturity instead of at an earlier date. Moreover, the nature of such charge, rather than its amount, should be determinative."

The $681.00 charge here satisfies the test set out in *Goldman* because it is a charge "that would not be imposed if the note were paid at maturity instead of at an earlier date." *Goldman*, 518 F.2d at 1252. *See also Schmidt v. Interstate Federal Savings & Loan Association*, 421 F.Supp. 1016, 1018 (D.D.C.1976) (Adopting and applying the *Goldman* test to hold that "had the Schmidts not decided to fully pay off their loan before maturity, they would not have incurred the prepayment charge"); *Krause v. GE Capital Mortgage Service, Inc.*, 314 Ill.App.3d 376, 383, 246 Ill.Dec. 774, 731 N.E.2d 302, 308 (2000) ("A prepayment penalty is one that is peculiarly associated with prepayment alone . . . and it would not be charged if the loan was paid at maturity"); *Colangelo v. Norwest Mortgage, Inc.*, 598 N.W.2d 14, 17 (Minn.App.1999). *See also Cappellini v. Mellon Mortgage Co.*, 991 F.Supp. 31 (D.Mass.1997).

The Closing Costs Waiver Certificate, signed by Bednar, does not allow Provident to impose an impermissible prepayment charge. The CLEC statute, § 12–1023(b)(3) of the Commercial Law Article, states that, "[e]xcept as expressly allowed by law, an agreement, note, or other evidence of a loan may not contain a provision by which the borrower waives any right accruing to the borrower under this subtitle." In addition, § 12–1023(b)(4)(i) provides that "[a]ny clause or provision in an agreement, note, or other evidence of a loan that is in violation of," *inter alia*, § 12–1023(b)(3), "shall be unenforceable." According to these provisions, the Closing Costs Waiver Certificate is invalid and cannot be enforced. Therefore, Bednar did not waive his right under § 12–1009(e) to prepay his loan without incurring a prepayment charge.

Neither the Circuit Court's nor Provident's theory, that the $681.00 charge was imposed "at the time of loan closing," is sound or justifies the collection of the $681.00 charge upon Bednar's prepayment. In reality, the $681.00 charge was conditional upon prepayment within three years. Moreover, the Closing Costs Waiver Certificate states that the closing costs will only "be added to the balance of the account" if the borrower "close[es the account] during the first three year period." In addition, the Settlement Statement recites that all

closing costs at the time of the August 2003 loan closing were paid by Provident. Requiring the reimbursement of closing costs that were previously waived and paid by the lender, simply because of the prepayment within three years, is a prepayment charge under the broad language of § 12–1009(e).

Provident also cannot properly circumvent § 12–1009(e) by calling the imposition of the charge a "recapturing" of permitted costs. A person or entity is not permitted to evade statutory prohibitions by using a different label for the prohibited conduct. It may be true, as Provident argues, that there is no statutory time limit on collecting the charges allowable under §§ 12–1005(b) and 12–1005(d)(ii) and (iii). Our holding in this case does not impose a time limit on collecting permissible charges. Rather, we simply hold that the collection of such charges may not be dependent upon prepayment.

Lastly, Provident's reliance upon the letters from the Office of the Maryland Commissioner of Financial Regulation is misplaced.

■ It is true that "an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight," *Board of Physician Quality Assurance v. Banks,* 354 Md. 59, 69, 729 A.2d 376, 381 (1999); and cases there cited. *See also, e.g., Montgomery County v. Glenmont Hills Associates,* 402 Md. 250, 271, 936 A.2d 325, 337 (2007) ("[A] reviewing court should give deference and 'considerable weight' to the interpretation of a statute by the agency created to administer it"); *Anderson v. General Casualty Insurance Company,* 402 Md. 236, 244–45, 935 A.2d 746, 751 (2007) ("[W]e give significant weight to an agency's experience in interpreting a statute the agency administers"); *MVA v. Shepard,* 399 Md. 241, 252, 923 A.2d 100, 106 (2007); *Miller v. Comptroller,* 398 Md. 272, 281, 920 A.2d 467, 472 (2007), and cases there cited.

■ Nevertheless, even though we "give considerable weight to the agency's experience in interpreting a statute that it administers, . . . it is within our prerogative to" interpret the statute, *John A. v. Board of Education,* 400 Md. 363,

382, 929 A.2d 136, 147 (2007). In *Macke Co. v. Comptroller*, 302 Md. 18, 22–23, 485 A.2d 254, 256–257 (1984), this Court rejected the interpretation of a tax statute administered by the Comptroller, saying:

> "The Comptroller maintains that 'the construction placed upon a statute by administrative officials soon after its enactment should not be disregarded except for the strongest and most cogent reasons.' ... This principle is applicable when statutory language is ambiguous. Nevertheless, the rule is firmly established that when statutory language is clear and unambiguous, administrative constructions, no matter how well entrenched, are not given weight."

*See also, e.g., Maryland Aviation Administration v. Noland*, 386 Md. 556, 572, 873 A.2d 1145, 1155 (2005) ("[W]hen a statutory provision is entirely clear, with no ambiguity whatsoever, 'administrative constructions ... are not given weight' "); *Maryland Division of Labor and Industry v. Triangle General Contractors*, 366 Md. 407, 417, 784 A.2d 534, 539 (2001); *Marriott Employees Federal Credit Union v. Motor Vehicle Administration*, 346 Md. 437, 446, 697 A.2d 455, 459 (1997).

As previously discussed, § 12–1009(e) of the Commercial Law Article is completely unambiguous. Consequently, we reject the apparent interpretation of the statute by the Office of the Commissioner of Financial Regulation and reverse the grant of summary judgment.

*JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED AND CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. RESPONDENT TO PAY COSTS.*