FIRST DIVISION

March 16, 1998

No. 1-97-1929

WOLF DIETRICH PEDDINGHAUS, ) Appeal from the

) Circuit Court of

Plaintiff-Appellant, ) Cook County

)

v. )

)

CARL ULLRICH PEDDINGHAUS, CARL GEORG ) 

PEDDINGHAUS, CAROLINE APPOLONIA ) 

PEDDINGHAUS and JULIA CAECILIA ) 

PEDDINGHAUS, ) Honorable

) Ellis S. Reid

Defendants-Appellees. ) Judge Presiding.

JUSTICE O'BRIEN delivered the opinion of the court:

Plaintiff, Wolf Peddinghaus, filed a four-count amended complaint alleging that defendant Carl Peddinghaus (Carl) had fraudulently induced him to enter into a purchase agreement pursuant to which he sold his interest in a family trust to Carl's children.  In counts I and II, plaintiff sought damages against Carl under theories of fraud and breach of fiduciary duty.  Plaintiff also asserted in count I a fraud-by-agency claim against Carl's children (hereinafter defendants), on the basis that Carl had acted as defendants' agent when he fraudulently induced plaintiff to sell his shares in the family trust.  Count III sought rescission of the purchase agreement.  Count IV alleged a claim of unjust enrichment against defendants.  

The trial court entered an order dismissing plaintiff's claims against defendants pursuant to section 2-615 of the Code of Civil Procedure  (735 ILCS 5/2-615 (West 1992)).  The court also made a finding that no just reason existed for delay of enforcement or appeal of the order.  134 Ill. 2d R. 304(a).  Plaintiff appeals.  We reverse and remand.

Plaintiff alleged that brothers Paul and Werner Peddinghaus created the Peddinghaus Corporation (the corporation), which is in the business of designing, manufacturing, and selling machine tools.  Paul Peddinghaus subsequently transferred his shares in the corporation to his five children, which included plaintiff and Carl Peddinghaus.

In May 1977, the five children executed a revocable inter-vivos trust named the Carl Ullrich Peddinghaus Trust (CUP trust).  At its formation, the CUP trust had as its corpus 50% of the shares of the corporation.  The trust document provided Carl with the express authority to act on behalf of his siblings, including plaintiff, in "all matters concerning" the CUP trust.

In the spring of 1991, Carl asked plaintiff to sell his shares in the CUP trust to him.  In discussions beginning in May 1991, Carl made the following representations to plaintiff regarding the proposed transaction:  the performance of the corporation, of which Carl was a member of the board of directors, was "not great" due to labor and other problems; the corporation could not then and would not in the foreseeable future pay dividends to shareholders; plaintiff could not withdraw any dividends paid by the corporation from the CUP trust; the corporation constituted a nonperforming asset; and the best way to value the corporation was based upon its paid-in capital.

During the summer of 1991, Carl informed plaintiff that, for tax purposes, he preferred that plaintiff sell his shares in the CUP trust to Carl's children, defendants Georg, Caroline, and Caecilia.  In September 1991, Carl provided plaintiff with a purchase agreement.  The agreement stated that plaintiff would sell his share in the CUP trust at an agreed-upon price of $370,762 and that defendants would purchase said shares by transferring their interest in another partnership to plaintiff, along with 95,000 shares in additional bonds.  Plaintiff executed the purchase agreement and transferred his shares in the CUP trust to defendants.

In February 1996, plaintiff obtained the 1991 tax return for Peddinghaus corporation.  The tax return showed the corporation had annual sales of $12.05 million and retained earnings of $5.643 million in 1991.  The value of the corporation was at least $8.6 million in 1991, and thus plaintiff's interest in the corporation, at the time he transferred his shares in the CUP trust to defendants for $370,762, was about $973,200.

Plaintiff alleged that Carl's representations to him in May 1991 regarding the corporation's poor performance, limited value, and inability to pay dividends were material in his decision to execute the purchase agreement and transfer his shares in the CUP trust to defendants for $370,762.  Each of those representations was false, in that the corporation was operating profitably, the fair value of the corporation far exceeded the corporation's paid-in capital, and dividends could have been paid to the shareholders.

In count I (fraudulent inducement against defendants), plaintiff alleged Carl was acting as defendants' agent during the negotiations with plaintiff when he fraudulently induced plaintiff to sell his interest in the CUP trust to defendants.  Alternatively, plaintiff alleged that even if defendants did not expressly authorize Carl to negotiate the purchase of plaintiff's CUP trust shares on their behalf, they later ratified his efforts and thus are liable for damages.

Count II, a breach of fiduciary duty count against Carl, is not an issue in this appeal.

Count III sought rescission of the purchase agreement based upon defendants' alleged fraud.

Count IV alleged that defendants were unjustly enriched through their continued possession of plaintiff's interest in the CUP trust.

The trial court dismissed plaintiff's claims against defendants pursuant to section 2-615 of the Code of Civil Procedure.  Plaintiff appeals.

When ruling on a section 2-615 motion to dismiss, the trial court accepts as true all well-pleaded facts and all reasonable inferences that can be drawn therefrom.  
Green v. Chicago Tribune Co.
, 286 Ill. App. 3d 1, 4 (1996).  The trial court should not dismiss a complaint unless it clearly appears no set of facts could be proved under the pleadings entitling plaintiff to relief.  
Green
, 286 Ill. App. 3d at 4-5.  In making such a determination, the trial court interprets the allegations of the complaint in the light most favorable to plaintiff.  
Green
, 286 Ill. App. 3d at 5.

For purposes of this appeal only, defendants do not dispute plaintiff's allegations that Carl fraudulently induced him to sell his shares in the CUP trust to defendants.  The question on this appeal is whether plaintiff pleaded sufficient facts to assert that Carl was acting as defendants' agent when he committed fraud against plaintiff.  If that question is answered affirmatively, then plaintiff stated a cause of action for fraud against defendants.  See 
Letsos v. Century 21 - New West Realty
, 285 Ill. App. 3d 1056, 1069 (1996) (principal is liable for deceit of his agent, if committed in the very business the agent was appointed to carry out). 

Plaintiff pleaded defendants "gave Carl authorization to complete the negotiations with [plaintiff], to prepare the Purchase Agreement, to obtain the signature of [plaintiff] on the Purchase Agreement, and to transmit the final agreement for their execution, all on their behalf.  Such authorization was given prior to the date upon which [plaintiff] executed the Purchase Agreement."  Plaintiff further pleaded "[d]uring his negotiations with [plaintiff], Carl held himself out as the fully authorized agent of Defendants Georg, Caroline, and Caecilia Peddinghaus.  Carl assured [plaintiff] that his principals, Georg, Caroline, and Caecilia, would have the requisite resources to consummate his proposed transaction and that Georg, Caroline, and Caecilia would sign the Purchase Agreement Carl had negotiated on their behalf."

Said pleadings, coupled with the further allegations by plaintiff that defendants completed the deal according to the terms negotiated by Carl, are sufficient to allege that Carl was acting as defendants' agent.  

Defendants contend, though, that plaintiff's amended complaint does not sufficiently allege the agency relationship existed in May 1991, when Carl allegedly made the fraudulent misrepresentations to plaintiff regarding the poor performance of the corporation.  We disagree.  The amended complaint asserts an agency relationship existed between defendants and Carl "prior to the date upon which [plaintiff] executed the Purchase Agreement."  Construing that allegation in the light most favorable to plaintiff, we conclude plaintiff has sufficiently pleaded that Carl was acting as defendants' agent at all times prior to the execution of the agreement, including in May 1991. 

Thus, plaintiff has pleaded that Carl was acting as defendants' agent when he allegedly committed fraud against plaintiff.  Such facts, if proven at trial, would enable plaintiff to recover damages against defendants, even if defendants were unaware of the fraud committed by Carl.  See 
Letsos
, 285 Ill. App. 3d at 1069.  Accordingly, count I of plaintiff's amended complaint states a cause of action for fraud in the inducement against defendants.

Count I of the amended complaint also asserts in the alternative that, even if Carl was not acting as defendants' agent at the time he committed fraud against plaintiff, defendants later ratified his efforts and thus are liable for damages.  

The act of ratification must be of the same nature as that which would be required to confer authority in the first place.  
Prodromos v. Poulos
, 202 Ill. App. 3d 1024, 1030 (1990).  Further, the ratifying party must have full knowledge of all material facts of the unauthorized transaction.  
Athanas v. City of Lake Forest
, 276 Ill. App. 3d 48, 56 (1995).  In other words, to plead ratification of Carl's unauthorized transaction, plaintiff must allege defendants were aware of the fraudulent misrepresentations made by Carl during that transaction.  Defendants argue plaintiff failed to plead such awareness on their part.  We disagree, as a careful consideration of plaintiff's pleadings, construed in the light most favorable to plaintiff, indicates he did plead defendants' awareness of Carl's fraud.  Plaintiff pleaded "[p]rior to execution of the Purchase Agreement, Carl consulted with one or more of his children regarding the proposed transaction and outlined the terms of the transaction including the purchase price to be paid by [plaintiff] and the method for calculating the same."  By alleging that Carl told defendants his "method" for determining how to pay plaintiff $600,000 less than the actual value of his shares in the CUP trust, plaintiff sufficiently asserted that Carl made defendants aware of his fraud.  Plaintiff also pleaded that defendants told Carl to continue negotiations with plaintiff, and defendants later completed the deal according to the terms negotiated by Carl.  Accordingly, plaintiff has sufficiently pleaded that defendants ratified Carl's actions.
(footnote: 1)
Having determined count I of plaintiff's amended complaint states a cause of action for fraud against defendants, we next address whether count III states a cause of action against defendants for rescission of the purchase agreement.  The elements of an equitable claim for rescission on the basis of fraud and misrepresentation are:  a statement of material fact, made to induce the other party to act; the statement is false and known by the party making it to be false; and the party to whom the statement is made must reasonably believe it to be true and rely thereon to his damage.  
Douglass v. Wones
, 120 Ill. App. 3d 36, 47-48 (1983).

Plaintiff has pleaded that defendants, through their agent Carl, made knowingly false representations regarding the corporation that plaintiff reasonably relied upon when signing the purchase agreement and selling his shares in the CUP trust for less than their true market value.  Accordingly, count II of plaintiff's amended complaint states a cause of action for rescission of the purchase agreement.

Next, we address whether count IV of plaintiff's amended complaint states a cause of action for unjust enrichment against defendants.  Defendants contend Illinois does not recognize an independent cause of action for unjust enrichment.  We disagree.  Our supreme court has expressly held that to "state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience."  
HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.
, 131 Ill. 2d 145, 160 (1989).

Plaintiff here has pleaded that defendants, through their agent Carl, defrauded him out of his shares in the CUP trust and paid him about one-third of the shares' market value.  Such allegations are sufficient to assert that defendants unjustly retain the shares to plaintiff's detriment and that defendants' retention of the shares violates justice, equity, and good conscience.

Defendants argue the doctrine of unjust enrichment is based on an implied or quasi-contract and, therefore, the doctrine has no application when, as here, a specific contract (the purchase agreement) exists which governs the relationship of the parties. 
People ex rel. Hartigan v. E&E Hauling, Inc.
, 153 Ill. 2d 473, 497 (1992);  
F.H. Prince & Co. v. Towers Financial Corp.
, 275 Ill. App. 3d 792, 804 (1995).  However, as discussed in 
Wolff v. Ampacet Corp.
, 284 Ill. App. 3d 824, 829 (1996), unjust enrichment may be predicated on either quasi-contract or tort.  In the present case, plaintiff bases his unjust enrichment claim on a tort theory, specifically, that defendants, through their agent Carl, fraudulently induced him to sell his shares in the CUP trust.  Since plaintiff's unjust enrichment claim is based on tort, instead of quasi-contract, the existence of a specific contract does not defeat his cause of action.

Defendants also argue we should uphold the dismissal of plaintiff's unjust enrichment claim because the relief sought under that theory--the imposition of a constructive trust and an equitable accounting-is unavailable since plaintiff failed to plead any wrongdoing by defendants.  See 
Suttles v. Vogel
, 126 Ill. 2d 186, 194 (1988) (holding that a "constructive trust will not be imposed unless the complaint makes specific allegations of wrongdoing [citations], such as fraud, breach of fiduciary duty, duress, coercion, or mistake"); 
Mann v. Kemper Financial Cos.
, 247 Ill. App. 3d 966, 980 (1992), quoting 
People ex rel. Hartigan v. Candy Club
, 149 Ill. App. 3d 498, 500-01 (1986) ("[t]o sustain an action for an accounting in equity, the complaint must allege the absence of an adequate remedy at law and one of the following: (1) a breach of a fiduciary relationship between the parties; (2) a need for discovery; (3) fraud; or (4) the existence of mutual accounts which are of a complex nature").

As discussed above, plaintiff's amended complaint makes sufficient, specific allegations of fraud on the part of defendants.  Accordingly, we reject defendants' claim that an equitable accounting or a constructive trust is unavailable here.

For the foregoing reasons, we reverse the trial court's order dismissing counts I, III, and IV of plaintiff's amended complaint and remand for further proceedings.

Reversed and remanded.

BUCKLEY, P.J., and O'MARA FROSSARD, J. concur.

FOOTNOTES
1:
In his initial complaint, plaintiff also pleaded that defendants were liable for Carl's alleged fraud because they "knowingly received the benefits of the fraud."  Plaintiff waived those allegations by failing to repeat them in his amended complaint.  
Barnett v. Zion Park District
, 171 Ill. 2d 378, 384 (1996).