In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-2960

BRIAN CLEARY, et al.,

*Plaintiffs-Appellants*,

*v.*

PHILIP MORRIS INCORPORATED, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 09 CV 1596—**Matthew F. Kennelly**, *Judge.*

ARGUED APRIL 7, 2011—DECIDED AUGUST 25, 2011

Before CUDAHY, MANION, and HAMILTON, *Circuit Judges.*

MANION, *Circuit Judge.* This is a class action suit brought against Philip Morris, Inc., and several other tobacco companies and tobacco-related entities. The plaintiffs allege that for years the tobacco companies conspired to conceal the facts about the addictive and dangerous nature of cigarettes by intentionally using incomplete, misleading, or untruthful marketing and advertising. The plaintiffs' putative class consists of Illinois residents

who bought or smoked cigarettes, and they seek the disgorgement of the tobacco companies' cigarette revenue under the theory of unjust enrichment. After extensive proceedings, the district court dismissed the case, ruling that the plaintiffs had failed to state a claim upon which relief could be granted. The court entered judgment for the defendants, and the plaintiffs now appeal a variety of issues. We affirm.

## I. Background

In 1998, the plaintiffs filed this class action case in Illinois state court against a host of parties in the cigarette business. As amended in 2000, the complaint proposed three different class action claims: (1) an "addiction" claim with a class consisting of all Illinois residents who bought cigarettes during the time period from 1953 to 1965 when the tobacco companies allegedly concealed facts about the addictive nature of cigarettes; (2) a "youth marketing" claim with a class consisting of all Illinois residents who began smoking as minors; and (3) a "lights" claim with a class consisting of all Illinois residents who bought Philip Morris's Marlboro Lights cigarettes. This First Amended Complaint stated causes of action under the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA), 815 ILCS 505, and the common-law doctrine of unjust enrichment.

A year later, the plaintiffs withdrew their request to certify the class in the "lights" claim because there was another class action lawsuit with a similar claim progressing in another Illinois court. Accordingly, the plaintiffs

later filed a Second Amended Complaint in 2005, which set out only the "addiction" and "youth marketing" claims. The "lights" claim in the parallel lawsuit ultimately proved unsuccessful before the Illinois Supreme Court. *See Price v. Philip Morris, Inc.*, 848 N.E.2d 1 (Ill. 2005). But in 2008, a United States Supreme Court decision in an unrelated case reopened the door to the possibility of a successful "lights" claim. *See Altria Group, Inc. v. Good*, 555 U.S. 70 (2008). The plaintiffs then filed a Third Amended Complaint in 2009, seeking to reinstate the "lights" claim in this case, along with the still-pending "addiction" and "youth marketing" claims. The new "lights" claim was also expanded to encompass other defendants who made light cigarettes besides Philip Morris, with a larger plaintiff class including all Illinois residents who had purchased and smoked any brand of "low tar," "light," or "ultra light" cigarettes in addition to Philip Morris's Marlboro Lights. By this time, the legal theory that the defendants had violated the ICFA had been dropped—presumably because Illinois Supreme Court case law had made class certification under that statute difficult in a case where individual damages and deception were not alleged. *See, e.g., Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 850 (Ill. 2005) (deception and actual damages are elements of a cause of action under the ICFA). Thus, only a theory of unjust enrichment remained.

One of the new "lights" defendants named in the case, Lorillard Tobacco Company, removed the suit to federal court under the Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. § 1332(d). The plaintiffs moved to

remand the case, arguing that the "lights" claim related back to the First Amended Complaint filed nine years earlier, and so a new window for a removal was not opened. The district court denied the motion, finding that the claim against Lorillard did not relate back and the removal was proper. Then, after ruling that any claim against Lorillard was time-barred, the district court dismissed it from the case. The plaintiffs subsequently argued that since Lorillard was the reason for the case's removal to federal court and since it was now no longer a party to the suit, the case should be returned to state court. The district court denied the request.

After Lorillard was dismissed, the other defendants in the "lights" claim moved for dismissal, arguing that the claims against them were also time-barred. The plaintiffs conceded that all of the "lights" defendants besides Philip Morris should be dismissed; they argued, however, that their claim against Philip Morris was still viable for every brand of "light" or "low tar" cigarette manufactured by Philip Morris. Philip Morris disagreed, contending that since Marlboro Lights was the only brand of cigarettes mentioned in the First Amended Complaint, only that claim should go forward. Ultimately, the district court restricted the "lights" claim only to the Marlboro Lights brand. Later, the district court also dismissed the "youth marketing" claim as time-barred.

In 2010, the plaintiffs filed a Fourth Amended Complaint reflecting the prior changes in the case. This final version of the complaint alleged only the "addiction" claim and the "lights" claim: the "addiction" claim proposed a class consisting of all Illinois residents who purchased

or consumed the defendants' tobacco products during the time when the defendants had deceptive marketing, and the "lights" claim proposed a class of all Illinois residents who purchased or consumed Philip Morris's Marlboro Lights cigarettes. Both classes' claims were based solely on the theory of unjust enrichment. Essentially, the plaintiffs' argument was that the defendant tobacco companies knowingly and intentionally concealed the truth from consumers about cigarettes' addictiveness and health problems (the "addiction" claim), and about the tar and nicotine found in Marlboro Lights (the "lights" claim)—and that it was through this wrongful behavior that the defendants were unjustly enriched. The plaintiffs explicitly disavowed any need to allege that they were deceived or injured by the defendants' actions. Instead, they argued that the violation of their right as consumers to know the truth about cigarettes and the egregious behavior of the tobacco companies were sufficient to support their cause of action. And they claimed that the principles of justice, equity, and good conscience would be violated if the defendants kept their earnings. Thus all the revenue from cigarette sales should be disgorged.[1]

The defendants filed a motion to dismiss the Fourth Amended Complaint, arguing that the unjust enrichment

---

[1] At oral argument, there was a question regarding whether the plaintiffs are seeking to disgorge all cigarette revenue or merely profits. In their complaint, the plaintiffs specifically request all revenue from the cigarette sales. We will thus assume that they are seeking revenue.

theory failed as a matter of law. The district court granted the defendants' motion and dismissed the case with prejudice. The plaintiffs then filed a motion for reconsideration, but the district court denied the motion. This appeal followed.

## II.  Analysis

In its brief on appeal, the plaintiffs contest several decisions made by the district court. We will first briefly address two minor decisions: (1) the court's decision not to remand the case to state court once the defendant Lorillard was dismissed; and (2) the court's decision not to expand the "lights" claim to other brands manufactured by Philip Morris besides Marlboro Lights. Then we will address the main issue on appeal: the district court's holding that the plaintiffs' unjust enrichment claim failed to state a claim upon which relief could be granted.

### A.  Remand to State Court

The first issue raised by the plaintiffs in their appellate brief is whether the district court erred in not remanding the case to state court once the defendant Lorillard—the diverse party whose presence in the suit was the reason for removal to federal court—was dismissed from the case. At oral argument, counsel for plaintiffs conceded that the district court properly had jurisdiction over the case. Counsel then stated that the district court could have exercised its discretion and

remanded the case to state court, but that it did not do so—and counsel seemed to indicate that it was abandoning this issue on appeal.

Counsel is correct to abandon this issue, as the district court committed no error. A federal court's jurisdiction under CAFA is determined at the time of removal. *In re Burlington N. Santa Fe Ry. Co.*, 606 F.3d 379, 380 (7th Cir. 2010). Here, there was no question that the case was properly removed under CAFA. And "nothing filed after removal affects jurisdiction. . . . [L]ater changes that compromise diversity do not destroy jurisdiction." *Id.* at 380-81; *see also Braud v. Transp. Serv. Co.*, 445 F.3d 801, 808 (5th Cir. 2006) ("[I]t is the 'action,' not claims against particular defendants, that is removable, so the subsequent dismissal of the removing defendant cannot render the entire lawsuit improperly removed."). Therefore, the district court properly retained jurisdiction of the case after Lorillard was dismissed, and it is not erroneous for the district court to decline to remand the case to state court.

## B. Expanding the "Lights" Claim to Other Brands

A second issue presented by the plaintiffs on appeal is whether the district court erred when it refused to expand the "lights" claim to other "low tar," "light," and "ultralight" brands besides Marlboro Lights. The district court premised its ruling on a finding that this expanded claim (asserted in the Third Amended Complaint) did not relate back to the original pleading (for our purposes, the First Amended Complaint). "Under

Illinois law as under federal law, an amendment relates back when it arises out of the same transaction or occurrence set up in the original pleading." *Phillips v. Ford Motor Co.*, 435 F.3d 785, 788 (7th Cir. 2006) (internal quotation omitted); *see also Porter v. Decatur Mem'l Hosp.*, 882 N.E.2d 583, 590 (Ill. 2008); Fed. R. Civ. P. 15(c). Here, the plaintiffs' original pleading did not mention other brands of cigarette products but only made allegations regarding Marlboro Lights. Expanding the class to include other "light" and "low tar" products would extend the potential liability to new class members (those who purchased or smoked brands other than Marlboro Lights), and it would involve new conduct and transactions (Philip Morris's marketing and sale of brands other than Marlboro Lights). The plaintiffs chose not to make allegations related to other cigarette brands in the original pleading. And based on this pleading, Philip Morris did not have notice that the case might encompass claims against other brands. The district court correctly found that the expanded claim did not arise out of the same transaction or occurrence, and it properly denied the plaintiffs' request to amend their claim.

## C.  Unjust Enrichment

We now come to the main issue on appeal: whether the district court properly dismissed the plaintiffs' claim for unjust enrichment for failure to state a claim under Illinois law. In Illinois, "[t]o state a cause of action based on a theory of unjust enrichment, a plaintiff must allege

that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989). A preliminary matter argued by the parties is whether Illinois law recognizes an independent cause of action for unjust enrichment, or whether unjust enrichment must always be tied to another underlying claim found in tort, contract, or statute.

The Illinois Supreme Court appears to recognize unjust enrichment as an independent cause of action. In *Raintree Homes, Inc. v. Vill. of Long Grove*, 807 N.E.2d 439, 445 (Ill. 2004), the plaintiffs were seeking the refund of overpaid fees under an unjust enrichment theory. No other underlying cause of action was alleged. The Court noted: "Here, plaintiffs have no substantive claim grounded in tort, contract, or statute; therefore the only substantive basis for the claim is restitution to prevent unjust enrichment." *Id.* Similarly, in another case before the Illinois Supreme Court, *Indep. Voters v. Ill. Commerce Comm'n*, 510 N.E.2d 850, 852-58 (Ill. 1987), the plaintiffs had filed suit to recover refunds for excessive utility charges and their claim for restitution of the charges was not tied to another cause of action. Finally, the Illinois Supreme Court has articulated the elements of unjust enrichment without reference to a separate underlying claim in tort, contract, or statute. *See HPI Health Care Servs.*, 545 N.E.2d at 679; *see also Peddinghaus v. Peddinghaus*, 692 N.E.2d 1221, 1225 (Ill. App. Ct. 1998) (ruling that Illinois recognizes an independent cause of

action for unjust enrichment based on *HPI Health Care Services*). From these cases, it appears that the Illinois Supreme Court recognizes unjust enrichment as an independent cause of action.

In contrast to this case law, there is a recent Illinois appellate court that suggests the opposite, namely, that an unjust enrichment claim cannot stand untethered from an underlying claim. *See Martis v. Grinnell Mut. Reinsurance Co.*, 905 N.E.2d 920 (Ill. App. Ct. 2009). The *Martis* court stated the following:

> The doctrine of unjust enrichment underlies a number of legal and equitable actions and remedies. *Unjust enrichment is not a separate cause of action that, standing alone, will justify an action for recovery.* Rather, it is a condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress, or undue influence, and may be redressed by a cause of action based upon that improper conduct. When an underlying claim of fraud, duress or undue influence is deficient, a claim for unjust enrichment should also be dismissed.

*Id.* at 928 (internal quotation and citations omitted) (emphasis added). Without setting out a comprehensive treatise on Illinois unjust enrichment law in an attempt to resolve the apparently conflicting language of the *Raintree Homes* and *Martis* cases, we suggest one way to make sense of it. Unjust enrichment is a common-law theory of recovery or restitution that arises when the defendant is retaining a benefit to the plaintiff's detriment, and this retention is unjust. What makes the reten-

tion of the benefit unjust is often due to some improper conduct by the defendant. And usually this improper conduct will form the basis of another claim against the defendant in tort, contract, or statute.[2] So, if an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim. *See, e.g.*, *Ass'n Benefit Servs. v. Caremark Rx, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007) ("[W]here the plaintiff's claim of unjust enrichment is predicated on the same allegations of fraudulent conduct that support an independent claim of fraud, resolution of the fraud claim against the plaintiff is dispositive of the unjust enrichment claim as well.").

This is what happened in two class action suits, similar to the one before us now, where we affirmed the

---

[2] *See, e.g.*, *Lewis v. Lead Indus. Ass'n*, 793 N.E.2d 869, 877 (Ill. App. Ct. 2003) ("In order for a cause of action for unjust enrichment to exist, there must be some independent basis which establishes a duty on the part of the defendant to act and the defendant must have failed to abide by that duty."); *Alliance Acceptance Co. v. Yale Ins. Agency*, 648 N.E.2d 971, 977 (Ill. App. Ct. 1995) ("The term 'unjust enrichment' is not descriptive of conduct that, standing alone, will justify an action for recovery. Rather, it is a condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress, or undue influence, and may be redressed by a cause of action based upon that improper conduct.") (quoting *Charles Hester Enters., Inc. v. Ill. Founders Ins. Co.*, 484 N.E.2d 349, 354 (Ill. App. Ct. 1985)).

dismissal of unjust enrichment claims. In *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 509 (7th Cir. 2006), the plaintiff brought a class action suit against the Coca-Cola Company on behalf of all purchasers of fountain Diet Coke, claiming that the company engaged in deceptive marketing regarding the presence of saccharin in its product. The plaintiff alleged a claim under the ICFA and a claim for unjust enrichment. *Id.* at 514. We first affirmed the dismissal of the ICFA claim because the plaintiff could not show either that the class members suffered harm or that the harm was caused by the company's allegedly deceptive conduct. *Id.* at 514-15. We then addressed the plaintiff's unjust enrichment claim and ruled that it was not viable because the plaintiff could not show that the company was unjustly enriched "without proof of deception." *Id.* at 515.

A few years later, in the case of *Siegel v. Shell Oil Co.*, 612 F.3d 932, 933 (7th Cir. 2010), the plaintiff brought a class action suit representing all gasoline purchasers and alleging that the defendant gasoline companies were unfairly manipulating and artificially inflating gas prices. Again, the plaintiff alleged a claim under the ICFA and an unjust enrichment claim. *Id.* After affirming the dismissal of the ICFA claim because the plaintiff had failed to prove that he was harmed and that the defendants' conduct caused the harm, we then considered the unjust enrichment claim. *Id.* at 937. Although we cited the *Martis* case for the proposition that unjust enrichment is not a separate cause of action that can stand on its own, we noted that the unjust enrichment claim was based on the same conduct underlying the

ICFA claim, and that without this claim, the unjust enrichment claim was not viable. *Id.* (citing *Martis*, 905 N.E.2d at 928).

Thus, in both *Oshana* and *Siegel*, the unjust enrichment claim was premised on improper conduct—deception in *Oshana* and unfair practices in *Siegel*—and this same alleged conduct also supported the ICFA claim. And when we found that the improper conduct was insufficient to support an ICFA claim, we likewise found that it was insufficient to establish unjust enrichment. The *Martis* case presented a comparable situation: the unjust enrichment claim was premised on the same fraud underlying the ICFA claim, and because there was no valid underlying fraud, both the ICFA claim and the unjust enrichment claim failed. *Martis*, 905 N.E.2d at 928. Based on these considerations, *Martis*'s articulation of unjust enrichment law might be viewed as language limited to its particular facts and not a true variance from how the Illinois Supreme Court considers unjust enrichment claims as illustrated by *Raintree Homes*.

Despite these reflections, it is not necessary to resolve definitively whether Illinois law recognizes unjust enrichment as an independent cause of action: the plaintiffs' case fails because their allegations are insufficient to support a cause of action for unjust enrichment.

The plaintiffs' unjust enrichment theory rests on the allegation that they had a legal right to know about the true nature and hazards of cigarettes. The plaintiffs assert that the defendants violated this right by failing

to disclose the full truth about cigarettes and that this failure to disclose was to the plaintiffs' detriment; and that defendants' retention of the benefit—the cigarette revenue—violates the fundamental principles of justice, equity, and good conscience. It is crucial to note that the plaintiffs do not allege that they suffered any harm, that they relied on the defendants' marketing, or that they would have acted differently had the defendants been truthful about the cigarettes they were selling. In fact, not only do the plaintiffs not make these allegations, but the plaintiffs also explicitly disavow any such allegations, claiming that they are entirely unnecessary to support their theory of unjust enrichment. In other words, the plaintiffs assert that their unjust enrichment claim does not require proof of deception, causation, or actual harm with regard to individual members of the plaintiff class.

As we stated above, for unjust enrichment, "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Servs.*, 545 N.E.2d at 678. The plaintiffs contend that in order to show detriment, they do not need to show that they suffered some loss or damages. *See Raintree Homes, Inc.*, 807 N.E.2d at 445. This is true in some unjust enrichment cases, like *Raintree Homes*, because unjust enrichment does not seek to compensate a plaintiff for loss or damages suffered but seeks to dis-

gorge a benefit that the defendant unjustly retains.[3] But while a plaintiff need not show loss or damages, he must show a detriment—and, significantly, a connection between the detriment and the defendant's retention of the benefit. *HPI Health Care Services*, 545 N.E.2d 678 ("a plaintiff must allege that the defendant has unjustly retained a benefit *to* the plaintiff's detriment") (emphasis added). In some unjust enrichment cases, the loss or damages suffered by a plaintiff might be relevant to establishing that there is a detriment.

Here, the benefit that the plaintiffs seek to recover is the revenue from the cigarette sales, while the detriment alleged by the plaintiffs is the violation of their legal right as consumers to be informed of the true nature and risks of the defendants' products. But since the plaintiffs disclaim any need to allege either personal damages, deception, or reliance with regard to any member of the class, it is difficult to see how the defendants' retention of the revenue paid by a consumer is to that consumer's detriment. According to the plain-

---

[3] The facts of the *Raintree Homes* case illustrate this distinction. There, the plaintiffs were seeking the refund of impact fees for building permits unfairly retained by the defendant village. *Raintree Homes, Inc.*, 807 N.E.2d at 442. The plaintiffs were not seeking compensation for any loss they personally suffered by not having the fees, such as the missed opportunities to use the fee money for other investments—they only wanted disgorgement of the fees. *Id.* at 445. In other words, the amount of the award sought by the plaintiffs was the defendant's "unjust gain, rather than the plaintiffs' loss." *Id.*

tiffs, the class of people with a valid unjust enrichment claim would include the consumer who bought cigarettes and was never injured in any manner by his purchase. It would include the consumer who was satisfied by his cigarette purchase and planned to continue purchasing cigarettes. It would include the consumer who would not have acted any differently had he been fully informed about cigarettes, but bought them anyway regardless of the defendants' marketing. It would include the consumer who was not deceived by the marketing because he was personally aware of the true nature of cigarettes, but still bought cigarettes despite their addictive and harmful nature—or even *because of* it. Under the plaintiffs' expansive theory, all of these consumers would have a cause of action for unjust enrichment because their legal right to be informed of the risks of cigarettes was violated.

But for many of these consumers, the defendants' retention of the cigarette revenue is *not* a detriment to them—it is possible that many of the consumers have no regrets about their purchases and would willingly repeat the same transaction, despite the violation of their legal right to be informed about the nature of cigarettes. Since these consumers would have acted no differently had the defendants properly informed them about the true nature of cigarettes, their transfer of money to the defendants in exchange for cigarettes was not to their detriment—and, accordingly, the defendants' continued retention of the money cannot be to their detriment either.

This would be a different case if there was a greater connection between the defendants' retention of the cigarette revenue and a detriment to the plaintiffs. For example, if the revenue was obtained in a manner that caused injury to the plaintiffs, or if the revenue was obtained by deceiving the plaintiffs, or even if the revenue was obtained by an inadvertent misrepresentation relied upon by the plaintiffs, the defendants' retention of the revenue might conceivably be to the plaintiffs' detriment. But these allegations have been explicitly disclaimed by the plaintiffs. Under these circumstances, it would not be unjust for a manufacturer to retain the money paid by a consumer for a product when this consumer was not deceived, would not have acted any differently had he known the truth about the product, was not hurt by the product, and was satisfied with the product and planned to continue purchasing the same product in the future. In short, the retention of this consumer's money is not detrimental to him.

The behavior alleged by the plaintiffs, namely, their claim that the defendants had a concerted plan to intentionally mislead consumers and conceal the truth about their cigarettes, is insufficient to support a cause of action for unjust enrichment. Unjust enrichment is not a mode of imposing punitive damages; it is a means of recovering something that the defendant is not entitled to but is unfairly possessing to the plaintiff's detriment.[4]

---

[4] "Actions for restitution have for their primary purpose taking from the defendant and restoring to the plaintiff some-

(continued...)

And we hold that the mere violation of a consumer's legal right to know about a product's risks, without anything more, cannot support a claim that the manufacturer unjustly retained the revenue from the product's sale to the consumer's detriment.[5]

Finally, the plaintiffs have asked us to certify to the Illinois Supreme Court the question of whether unjust enrichment can be an independent cause of action separate from an underlying tort, contract, or statutory

---

[4] (...continued)

thing to which the plaintiff is entitled. . . . [A]ctions of restitutionare not punitive." Restatement (Third) of Restitution and Unjust Enrichment § 49, reporter's note to cmt. a (2011). "Disgorgement of wrongful gain is not a punitive remedy. . . . The rationale of punitive or exemplary damages is independent of the law of unjust enrichment." Restatement (Third) of Restitution and Unjust Enrichment § 51, cmt. k (2011).

[5] As discussed at oral argument, were we to accept the plaintiffs' theory of the case, it would have significant implications for our current legal system. All the revenue obtained by a malfeasant company from selling a dangerous product would be disgorged and distributed among all purchasers of the product according to the expenses incurred by each purchaser. The "deep pockets" of the malfeasant company would be emptied, with little left to compensate those who were actually injured by the product. This course appears to us unwise, to say the least. At oral argument, counsel for the plaintiffs suggested that a court in equity could hold back sufficient funds to take care of those with personal-injury claims; we suspect this would be difficult to successfully implement in practice.

claim. The most important consideration guiding our decision to certify a question to the Illinois Supreme Court "is whether the reviewing court finds itself genuinely uncertain about a question of state law that is vital to a correct disposition of the case." *State Farm Mut. Auto. Ins. Co. v. Pate*, 275 F.3d 666, 671 (7th Cir. 2001) (internal quotation omitted). Since the question about unjust enrichment being an independent cause of action is not vital to the disposition of the case, there is no need for certification—regardless of the answer, we conclude that the plaintiffs have not sufficiently alleged a cause of action for unjust enrichment. In their reply, the plaintiffs suggest the certification of a second question: what is needed to establish the "detriment" element of an unjust enrichment claim. In the context of this case, Illinois law on unjust enrichment is sufficiently clear. Certification is not necessary. *See id.* at 672 ("At some level there is uncertainty in every application of state law. There is always a chance that a state supreme court, if it had the same case before it, might decide the case differently. This ever-present possibility is not sufficient to warrant certification.").

In sum, we conclude that the plaintiffs' allegations of unjust enrichment are insufficient to state a claim for which relief can be granted. The district court correctly dismissed the plaintiffs' Fourth Amended Complaint and entered judgment for the defendants.[6]

---

[6] The plaintiffs also appeal two other related issues, but they are resolved in light of our ruling. In particular, our ruling

(continued...)

### III. Conclusion

The district court did not err by not remanding the case to state court. Nor did the district court err by refusing to extend the "lights" class to additional brands besides Marlboro Lights. But most importantly, we agree with the district court that the unjust enrichment claim, as alleged by the plaintiffs, is not viable: a violation of the consumer's legal right to know about a product's risks, without anything more, cannot support an unjust enrichment claim against the product's manufacturer.

We AFFIRM.

---

[6] (...continued)
gives us reason to affirm the district court's grant of summary judgment on the individual claims of Rita Burke in the Third Amended Complaint and the district court's denial of class certification on the "lights" claim.

---