2025 IL App (1st) 231181-U

No. 1-23-1181

Order filed March 5, 2025

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| ROBERT BOSCO, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff and Counterdefendant-Appellee and | ) | Cook County. |
| Cross-Appellant, | ) | |
| | ) | |
| v. | ) | No. 14 CH 9330 |
| | ) | |
| JOSEPH BOSCO, and LOMBARD AUTO EXCHANGE, | ) | |
| INC., | ) | |
| | ) | |
| Defendants and Counterplaintiffs, | ) | |
| | ) | Honorable |
| (Joseph Bosco, Defendant and Counterplaintiff-Appellant | ) | Eve M. Reilly, |
| and Cross-Appellee). | ) | Judge, presiding. |

PRESIDING JUSTICE LAMPKIN delivered the judgment of the court.
Justices Reyes and Martin concurred in the judgment.

**ORDER**

¶ 1    *Held*:   After a bench trial, the trial court's conclusion that the parties failed to prove their claims of breach of fiduciary duty, shareholder oppression, breach of contract, and unjust enrichment or *quantum meruit* was not against the manifest weight of the evidence. Furthermore, the trial court's application of the business judgment rule

was not error because it is neither an affirmative defense nor a special defense that must be pled by a party.

¶ 2    This litigation involves two brothers who sued each other based on disputes that arose during their co-ownership of their used car business. The trial court, after a bench trial, found that neither party proved any of their claims. Accordingly, the trial court entered judgment in favor of defendants Joseph Bosco and Lombard Auto Exchange, Inc. (Lombard Auto) on plaintiff Robert Bosco's claims, and in favor of Robert on Joseph and Lombard Auto's claims.

¶ 3    On appeal, Joseph argues that the trial court's denial of his claims of breach of fiduciary duties, shareholder oppression, breach of contract, and *quantum meruit* was against the manifest weight of the evidence.

¶ 4    In his cross-appeal, Robert argues that the trial court erred as a matter of law by considering the unpled defense of bad business judgment, and the trial court's denial of his breach of fiduciary duty claim was against the manifest weight of the evidence.

¶ 5    For the reasons that follow, we affirm the judgment of the circuit court.[1]

¶ 6                                    I. BACKGROUND

¶ 7    In 1992, brothers Robert and Joseph Bosco incorporated Lombard Auto, a used car business that purchased vehicles for resale. Robert and Joseph each owned 50% of Lombard Auto. Robert was its president, and Joseph was its vice president, secretary and treasurer. Robert and Joseph's relationship was contentious. They met numerous times with Lombard Auto's accountants about the possibility of Joseph purchasing Robert's interest in Lombard Auto, but they never reached an agreement.

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

¶ 8     In June 2014, Robert sued Joseph and Lombard Auto, and thereafter Joseph and Lombard Auto filed a counterclaim against Robert. Lombard Auto was voluntarily dissolved in 2015.

¶ 9     In his 2020 second amended complaint, Robert alleged claims for (1) an accounting, (2) breach of fiduciary duty, (3) unjust enrichment, and (4) shareholder oppression. Thereafter, Joseph and Lombard Auto alleged in their second amended counterclaim claims for (1) breach of fiduciary duties, (2) shareholder oppression, (3) breach of contract, and (4) unjust enrichment.

¶ 10     At the bench trial in 2021, the evidence showed that Lombard Auto sold retail vehicles to customers and wholesale vehicles to other dealerships or at auction. Lombard Auto was located on property that Robert and Joseph jointly owned in their individual capacities. Lombard Auto paid $2500 each to Robert and Joseph for rent per month. Both Robert and Joseph purchased vehicles for Lombard Auto. However, Joseph focused on retail operations, managed the property, and handled Lombard Auto's relationships with finance companies and banks, whereas Robert handled the wholesale operation, commissions to salespeople, and other related administrative tasks. The wholesale operation involved less overhead, time, and staff than the retail operation. The approximate average profit for Lombard Auto for a wholesale sale was $350 to $380, whereas the average profit for a retail sale was $1450.

¶ 11     Aside from the purchase and sale of used vehicles, which each brother could undertake independently, major decisions involving Lombard Auto's business in an amount of $50,000 or more had to be agreed upon by Robert and Joseph. Although Joseph handled Lombard Auto's QuickBooks account, both Robert and Joseph had access to that account. Lombard Auto's documents from QuickBooks, statements for Robert's and Joseph's Lombard Auto credit cards, and tax records were admitted into evidence.

¶ 12    Robert and Joseph orally agreed that personal expenditures were acceptable in the operation of Lombard Auto's business, and they testified that they intended on reconciling such expenses. Their wives also had Lombard Auto credit cards, which they used for personal expenses. No accounting or reimbursement ever took place for personal credit card expenses during the pendency of Lombard Auto's business.

¶ 13    Neither Robert nor Joseph had any set hours that they were supposed to work at Lombard Auto. It was their common practice to come and go as they pleased with no governing documents to state otherwise. They each spent about 30% to 70% of their work hours away from Lombard Auto. There was no evidence showing any requirement for either Robert or Joseph to purchase a certain number of vehicles per year. In approximately 2005, Robert and Joseph started having disagreements about whether to expand their business, whether the business needed more space, and how to best operate.

¶ 14    Joseph and Robert Sacco, Lombard Auto's manager, testified credibly that approximately 60 vehicles fit in Lombard Auto's lot, but Lombard Auto often had more than 100 vehicles. When Lombard Auto lost its access to store its vehicles for free at the restaurant parking lot next door, Lombard Auto needed somewhere near to park its vehicles. Robert did nothing about this problem and left it to Joseph to solve. To remedy this issue, Joesph, in June 2009, used his own funds to buy a warehouse about one-half mile from Lombard Auto. Lombard Auto began using the warehouse in 2009 for storage and in 2013 for detailing. The trial court found that the warehouse made Lombard Auto's operations easier, and Lombard Auto benefitted from the warehouse use for years. Moreover, Lombard Auto's tax returns indicated that Lombard Auto's profits went up in 2010 and 2011.

¶ 15    Although Robert did not agree to participate in the warehouse purchase, he did not object to it. Robert testified that he learned Joseph had bought the warehouse after the fact from Sacco. When Lombard Auto began using the warehouse to store vehicles in 2009, Robert did not object until he sent Joseph an email in September 2014 stating that he refused to permit Lombard Auto's use or rental of the warehouse. Joseph, however, did not discontinue Lombard Auto's use of his warehouse. The trial court found that Robert was aware that Lombard Auto was using the warehouse and went along with it. He also knew Joseph was improving the warehouse space for Lombard Auto's use and even helped carry materials into the warehouse for its renovation. No lease was ever drafted or signed for Lombard Auto's rental or use of Joseph's warehouse. In total, Joseph spent from 2009 to 2015 at least $100,916.88 of Lombard Auto's money on expenses for his warehouse, including construction and rehabbing. Robert never agreed to those expenditures, and Joseph never repaid that money to Lombard Auto or Robert.

¶ 16    As part of his wholesale work, Robert sold several vehicles to Dave's Auto Body, which failed to pay Lombard Auto. Robert had a prior relationship with Dave's Auto Body and had not had prior problems with that company. When Robert learned that Dave's Auto Body was having trouble, he told Joseph that he would take care of it. Robert testified that he did what he could to recover the money for the vehicles, but Dave's Auto Body went out of business and Lombard Auto lost money on three vehicles. Although Joseph testified that Robert gave him a guarantee that he would pay for the loss Lombard Auto sustained due to the closure of Dave's Auto Body, the trial court found Robert's testimony on this issue more credible than Joseph's.

¶ 17    In 2011, accountant Frank Costabile recommended to Robert and Joseph that, due to their differences in running the business, they should consider operating separately under the Lombard

Auto umbrella at the Lombard Auto location, and open separate bank accounts under Lombard Auto's name. Accordingly, in January 2012, Robert opened a new, separate Lombard Auto bank account to buy and sell vehicles, drawing upon his personal line of credit. All the profits generated by Robert's use of that separate account were deposited into Lombard Auto's master checking account when those profits were generated, and the funds in the account belonged to Lombard Auto. Robert did not keep or retain any of that money or comingle it with his own funds. When Joseph learned about the separate account, he told Robert that he was not willing to share Lombard Auto with him as a separate entity because their agreement was to be partners and it would be impossible to share Lombard Auto's employees and space. At a meeting in August 2012, Robert accounted to Joseph for every transaction and dollar spent from that separate account.

¶ 18 Lombard Auto had in place a line of credit that it regularly used to purchase vehicles. The line of credit provided $400,000 to Lombard Auto and was guaranteed by Robert and Joseph personally. Lombard Auto had to reapply for the line of credit each year. Robert testified that because he believed he and Joseph were going to split up soon or end their business relationship as of the spring of 2012, Robert did not sign a renewal application for a line of credit for Lombard Auto in May 2012. However, based upon the records and testimony, the trial court found that there was never a shortage of cash during Lombard Auto's business that prevented it from purchasing vehicles. Moreover, the brothers also maintained personal lines of credit upon which they could draw.

¶ 19 Robert and Joseph made loans to Lombard Auto through shareholder notes. The original amount of their shareholder notes was $179,516.34 each. However, at the end of 2013, Robert's shareholder note balance was $79,516.34, while Joseph's was $419,516.34. Although Joseph

testified that they had a tacit agreement and past practice of never going below the original amount of their shareholder notes, the trial court found that they had no written bylaws or written or oral agreements regarding the repayment of the money they lent to Lombard Auto.

¶ 20 Robert testified that, based on his belief that he had a deal with Joseph to depart Lombard Auto, he told Joseph in November 2012 that he would be leaving Lombard Auto at the end of the year and therefore would be repaying himself for the loan he had made to Lombard Auto. The trial court found that, after Robert's repayment of his shareholder note on December 31, 2012, (1) Lombard Auto had a cash balance of $285,000, which was above its average cash balance of $230,000, (2) Lombard Auto's accounts were not short of cash and Joseph admitted that Lombard Auto had sufficient cash to purchase used vehicles at all times, and (3) the repayment resulted in lessening Lombard Auto's bank account for only 22 days because Robert re-lent Lombard Auto $179,000 as of January 22, 2013.

¶ 21 Lombard Auto's accountant Frank Costabile testified that he was surprised when he learned that Robert had repaid himself for his shareholder note. Costabile testified that Robert and Joseph could not both repay their shareholder notes if Lombard Auto was to continue to operate the way it had been operating. Towards the end of Lombard Auto's existence, the business focused on inventory that could be moved quickly, *i.e.*, the wholesale vehicles that were Robert's specialty. Thus, Joseph purchased inventory at a lower rate than Robert because Lombard Auto was dissolving.

¶ 22 In June 2023, the trial court delivered an oral ruling. Based on the evidence presented and the court's credibility findings, the court ruled that none of the parties had proved any of their

claims by a preponderance of the evidence. The court entered judgment in favor of Joseph and Lombard Auto on Robert's claims, and in favor of Robert on Joseph and Lombard Auto's claims.

¶ 23 Joseph timely appealed. This court granted Robert's unopposed motion for an extension of time to file his cross-appeal, which he timely did thereafter.

¶ 24                                        II. ANALYSIS

¶ 25                                    A. Joseph's Appeal

¶ 26 Joseph argues that the trial court erroneously denied his counterclaim because the manifest weight of the evidence supported his claims against Robert for breach of fiduciary duties, shareholder oppression, breach of contract, and *quantum meruit*. Joseph contends that the trial court made minimal factual findings and failed to address or consider most of the evidence presented in this case. Joseph also argues that the trial court applied the incorrect legal standard to his *quantum meruit* claim.

¶ 27 A trial court's ruling on a question of fact will not be disturbed unless it is against the manifest weight of the evidence, which occurs if an opposite conclusion is clearly evident. *Indeck Energy Services, Inc. v. DePodesta*, 2021 IL 125733, ¶ 56. A decision may be reversed as against the manifest weight of the evidence when the findings appear to be unreasonable, arbitrary, or not based on the evidence. *Chicago Architectural Metals, Inc. v. Bush Construction Co.*, 2022 IL App (1st) 200587, ¶¶ 48-49; *Eychaner v. Gross*, 202 Ill. 2d 228, 252 (2002). However, in assessing the trial court's application of the doctrine of *quantum meruit*, the reviewing court reviews the trial court's factual findings under the manifest weight standard and reviews the legal questions *de novo*. *Samour, Inc. v. Board of Election Commissioners*, 224 Ill. 2d 530, 542 (2007). Under *de*

*novo* review, this court performs the same analysis the trial court would perform with no deference shown to the trial court's judgment. *Beauchamp v. Dart*, 2022 IL App (1st) 210091, ¶ 8.

¶ 28                                  1. Breach of Fiduciary Duties

¶ 29    Joseph argues he proved that Robert breached his fiduciary duties to him and Lombard Auto by intentionally acting against the interests of Lombard Auto and causing its financial decline. Specifically, Joseph argues that, after he and Robert started unsuccessful negotiations for a buyout of Robert's shares in late 2012, Robert started to separate himself from Lombard Auto by (1) making unilateral withdrawals of his shareholder note, (2) refusing to reapply for Lombard Auto's $400,000 line of credit, and (3) conducting the wholesale business as if he was independent of Lombard Auto by surreptitiously opening a separate Lombard Auto account and wholesaling more vehicles than usual. According to Joseph, Robert's self-interested conduct was intended to give him leverage in his disputes with Joseph and defeat Lombard Auto's ability to continue the business for which it was developed. Joseph states that Lombard Auto's profits decreased 39% in 2012, 29% in 2013, and 40% in 2014.

¶ 30    To establish a claim for breach of fiduciary duty, the plaintiff must show that a fiduciary duty exists on the part of the defendant, the defendant breached that duty, and such breach proximately caused the injury of which the plaintiff complains. *Lawlor v. North American Corporations of Illinois*, 2012 IL 112530, ¶ 69. Robert and Joseph were both 50% shareholders in Lombard Auto. As majority shareholders in a closely held corporation, they owed a duty akin to that of partners. See *Hagshenas v. Gaylord*, 199 Ill. App. 3d 60, 69 (1990). Those fiduciary duties are a duty of loyalty, good faith, and honesty. *ARTRA Group Inc. v. Salomon Brothers Holding Co., Inc.*, 288 Ill. App. 3d 467, 470 (1997). However, "partnership losses occasioned by a partner's

poor judgment or mistake of judgment will be borne by the partnership so long as the decision does not involve fraud, illegality, or a conflict of interest." *Borys v. Rudd*, 207 Ill. App. 3d 610, 620 (1990).

¶ 31 The trial court found that Joseph's breach of fiduciary duties claim lacked merit. Joseph did not specifically allege illegality, fraud or a conflict of interest, and therefore, Lombard Auto had to bear the loss of any breach. See *id*. Furthermore, the court found no merit to the claim that Robert injured Lombard Auto when he withdrew his shareholder loan. Specifically, Robert and Joseph had no written bylaws or written or oral agreement regarding the repayment of the shareholder loans. Also, the evidence showed that when Robert repaid himself for his shareholder note, Lombard Auto had over $285,000 in cash and hundreds of thousands of dollars in inventory. Further, Robert redeposited the $179,000 within 22 days, so Joseph failed to show by a preponderance of the evidence that Lombard Auto was damaged by the temporary withdrawal of those funds.

¶ 32 Joseph challenges certain factual findings of the trial court. Specifically, Joseph argues that he testified at trial without contradiction that on December 27, 2012, four days before Robert paid himself, Joseph bought seven vehicles at an auction for approximately $106,000, but the checks had not cleared at the time of the accounting. Therefore, Lombard Auto actually had only $179,000 in cash at the time of Robert's self-payment, not $285,000. Joseph also argues that Robert's self-interested loan repayment was not a one-time temporary problem. Joseph complains that Robert continuously and unilaterally used Lombard Auto's funds to repay himself on a loan that was not due. Joseph contends the evidence showed that Robert repeatedly brought his balance below the

"established minimum" of $179,516.34 and repeatedly brought the balance of his note far below the balance of Joseph's.

¶ 33    The facts raised by Joseph on appeal do not render the trial court's ruling against the manifest weight of the evidence. Even if Lombard Auto had $179,000 in cash rather than $285,000 at the end of 2012, the evidence established that Robert repaid within 22 days the funds he had withdrawn, Lombard Auto had hundreds of thousands of dollars in inventory, Joseph had his personal line of credit available to him, and there was never a shortage of funds during Lombard Auto's business operations that prevented it from purchasing vehicles.

¶ 34    The trial court also found that Joseph also did not prove that Robert was running a separate wholesale operation. Bill Bryerton was Lombard Auto's tax accountant and prepared Lombard Auto's tax returns. Bryerton's testimony established that the separate account Robert opened was always a Lombard Auto account, and Robert put $400,000 of his own money into it and started using the account to buy vehicles in 2012. Moreover, Robert took no funds from the separate account personally; the money from those sales went into Lombard Auto's master account. The separate account generated over $70,000 in profits during the two months Robert used it. Furthermore, Joseph was aware that Robert was using the account. The court concluded that Joseph did not show that any damages resulted from Robert's actions and thus did not prove a breach of fiduciary duty claim.

¶ 35    Regarding Robert's refusal to reapply for the $400,000 line of credit, the trial court found that Joseph failed to show that any breach of fiduciary duty caused him to sustain any damages. The testimony and records in evidence established that Lombard Auto always had funds to purchase vehicles and never missed an opportunity to purchase vehicles. When Robert refused to

sign that line of credit, Lombard Auto had a substantial cash surplus. The evidence also showed that Lombard Auto actually had more cash and more inventory in 2013, which was over a year after Robert had refused to sign the line of credit. Furthermore, both Robert and Joseph had personal lines of credit to purchase vehicles for Lombard Auto in addition to the $400,000 line of credit they shared.

¶ 36 Our review of the record supports the trial court's factual findings and conclusion that Joseph failed to meet his burden of proof. Joseph cannot point to any factual issue on which an opposite conclusion is clearly evident. See *Indeck Energy Services, Inc.*, 2021 IL 125733, ¶ 56. We conclude that the trial court's ruling that Joseph did not prove his breach of fiduciary duties claim was not against the manifest weight of the evidence.

¶ 37 2. Shareholder Oppression

¶ 38 Joseph argues he proved that Robert committed shareholder oppression by (1) operating from the separate account in 2012 and 2014, (2) withdrawing his shareholder note below the "agreed minimum" continuously from 2012 to 2015, and (3) causing Lombard Auto to lose its line of credit and the $400,000 purchasing power it provided from 2012 to 2015.

¶ 39 Section 12.56(a)(3) of the Business Corporation Act of 1983 (Act) (805 ILCS 5/12.56(a)(3) (West 2020)), provides remedies to shareholders of closely held corporations where directors or those in control of the corporation acted in a manner that is illegal, oppressive, or fraudulent with respect to the other shareholders. The Act does not define what types of conduct are oppressive, but this court has stated that conduct is oppressive if it is " 'overbearing and heavy-handed.' " *Hager-Freeman v. Spircoff*, 229 Ill. App. 3d 262, 276-77 (1992), quoting *Compton v. Paul K. Harding Realty Co.*, 6 Ill. App. 3d 488, 499 (1972). Other jurisdictions have defined "oppression"

in a statute comparable to section 12.56 of the Act as "burdensome, harsh, and wrongful conduct; a lack of probity and fair dealing in the affairs of a company to the prejudice of some of its members, or a visible departure from the standards of fair dealing; and a violation of fair play on which every shareholder who entrusts his money to a company is entitled to rely." *Nakata v. Blue Bird, Inc.*, 191 P.3d 900, 904 (Wash. App. 2008); *Churchman v. Kehr*, 836 S.W.2d 473, 482 (Mo. Ct. Appeals 1992) (same); *Baker v. Commercial Body Builders, Inc.*, 507 P.2d 387, 393 (Or. 1973) (same). The deadlock provision in section 12.56(a) requires that a deadlock either cause or threaten irreparable injury to the corporation or prevent the corporation from operating for the general benefit of its shareholders. 805 ILCS 5/12.56(a) (West 2020).

¶ 40    The trial court rejected Joseph's shareholder oppression claim, which was based on the same conduct that formed the basis of his breach of fiduciary duties claim. The court found that Joseph did not show that Robert was operating a separate business or decapitalized Lombard Auto. Moreover, Joseph did not show that any of the alleged conduct was illegal, oppressive, or fraudulent.

¶ 41    The manifest weight of the evidence shows that there were no written rules or bylaws for Robert's and Joseph's use of Lombard Auto's money. They both used Lombard Auto's funds without the other's approval and acted in their own sphere of the business without obtaining consent from the other. There was no departure from that custom and practice, which the brothers had established at Lombard Auto for over 20 years. Joseph presents no facts or legal support to justify overturning the trial court's decision to reject his claim of shareholder oppression against Robert.

¶ 42                                    3. Breach of Contract

¶ 43     Joseph argues that he proved his breach of contract claim because the evidence showed that the parties agreed to reimburse each other for disparate personal expenses. Joseph states the evidence showed that both parties had Lombard Auto credit cards and access to Lombard Auto's bank accounts, and both spent Lombard Auto's money on personal items with the understanding that they would eventually reconcile the expenses and make the parties equal and whole. Joseph argues that he performed under the agreement by attempting to reconcile personal expenditures with Robert on numerous occasions, but to no avail. Joseph argues that Robert owes him $39,104.04 for Robert's personal expenses on Lombard Auto's credit card, personal cell phone charges, vehicle purchases or write downs for his family, and use of petty cash.

¶ 44     To recover for a breach of contract claim, a plaintiff must prove (1) the existence of a contract, (2) plaintiff performed all contractual obligations, (3) facts constituting a breach, and (4) damages from the breach. *Storino, Ramello & Durkin v. Rackow*, 2015 IL App (1st) 142961, ¶ 17.

¶ 45     The trial court ruled that there was no merit to Joseph's claim that Robert breached a contract by spending more on personal expenses than Joseph did and failing to reconcile the difference. First, the court stated that Joseph did not specifically allege illegality, fraud, or a conflict of interest and, therefore, Lombard Auto, as a closely held corporation, must bear the loss of any poor judgment or bad business decision. See *Borys*, 207 Ill. App. 3d at 620. Furthermore, the court found that both brothers had credit cards issued by Lombard Auto and used them for personal expenses; neither of them needed the approval of the other to use Lombard Auto's money; and they never once paid each other or Lombard Auto for their personal expenses from 1992 to 2015. The court found that neither Robert nor Joseph testified credibly on the issue of personal

expenses. Nevertheless, even if they had an agreement to which Robert did not comply, Joseph failed to show that Robert spent more of Lombard Auto's money than he did, especially given Joseph's $100,000 plus spending of Lombard Auto's money on improvements to the warehouse that he owned. Accordingly, the court concluded that Joseph did not show that he performed under any contract.

¶ 46    Our review of the record establishes that the trial court's rejection of Joseph's breach of contract claim was not against the manifest weight of the evidence.

¶ 47                                    4. Unjust Enrichment/*Quantum Meruit*

¶ 48    Joseph argues on appeal that although his claim for damages for Lombard Auto's use of his warehouse was labeled in his counterclaim as an unjust enrichment action, his pleading is better categorized as an action for *quantum meruit*. Joseph states that he made his argument for *quantum meruit* relief to the trial court before it rendered its ruling, and Robert does not contest this statement. The trial court's ruling, however, addressed Joseph's claim only as an unjust enrichment action.

¶ 49    Robert responds that it does not matter whether the court considers Joseph's claim as one for either unjust enrichment or *quantum meruit* because he failed to prove his claim under both characterizations.

¶ 50    When analyzing whether a party is liable under a quasi-contract or *quantum meruit* claim, the period to be scrutinized in determining the equity of the remedy is the period when the benefit was conferred, rather than the time of the lawsuit. *Rutledge v. Housing Authority of the City of East St. Louis*, 88 Ill. App. 3d 1064, 1068 (1980). Furthermore, where services are conferred for business reasons, without the anticipation that reimbursement will directly result, quasi-contractual

relief is not warranted. *Id.* " ' "The mere fact that a person benefits another is not of itself sufficient to require the other to make restitution therefor." ' " *Hayes Mechanical, Inc. v. First Industrial, L.P.*, 351 Ill. App. 3d 1, 9 (2004), quoting *Rutledge*, 88 Ill. App. 3d at 1068, quoting Restatement (First) of Restitution § 1, Comment *c* (1937).

¶ 51    To establish a claim of "unjust enrichment, a plaintiff must allege that the defendant had unjustly retained a benefit to the plaintiff's detriment, and that the defendant's retention of the benefit violates the fundamental principles of justice, equity and good conscience." *HPI Healthcare Services, Inc. v. Mount Vernon Hospital*, 131 Ill. 2d 145, 160 (1989). Unjust enrichment is inapplicable where there is an expressed contract, either oral or written, that governs the parties' relationship. *Gagnon v. Schickel*, 2012 IL App (1st) 120645, ¶ 25.

¶ 52    The trial court ruled that Joseph's unjust enrichment claim failed because unjust enrichment is not a separate cause of action that, standing alone, would justify an action for recovery and Joseph did not allege or prove that Robert engaged in fraud, duress, or undue influence. The court also stated that unjust enrichment results from wrongdoing, and there was no wrongdoing by Robert here. The court noted that Joseph, who handled the finances for Lombard Auto and decided that it needed more space to park vehicles, could have requested rent for the warehouse or drawn up a lease from 2009 to 2015 but never did. The trial court inferred that Joseph did not ask for rent or draw up a lease because he was already obtaining money from Lombard Auto to fix up his warehouse. The court found that no evidence showed that Robert used fraud, undue influence, or duress to prevent Joseph from obtaining rent. The court observed that if Lombard Auto had to pay rent for the warehouse, it would have reduced Lombard Auto's profits from 2009 to 2015 and thus would have reduced the amount of money that Robert and Joseph used

for their own expenses. The court concluded that Joseph failed to prove his claim of unjust enrichment because he, as a co-owner of Lombard Auto, also benefitted from the arrangement whereby Lombard Auto used his warehouse, so there was no violation of the principles of equity or justice.

¶ 53　Joseph argues that the trial court misstated the law by requiring him to show wrongdoing by Robert to prove an unjust enrichment claim because this court has held the opposite. See *National Union Fire Insurance Co. v. DiMucci*, 2015 IL App (1st) 122725, ¶ 67 (A "cause of action based upon unjust enrichment does not require fault or illegality on the part of [the defendant]; the essence of the cause of action is that one party is enriched and it would be unjust for that party to retain the enrichment") (Internal quotation marks omitted.). Furthermore, Joseph argues that in *Cleary v. Philip Morris Inc.*, the Seventh Circuit observed that the "Illinois Supreme Court appears to recognize unjust enrichment as an independent cause of action." 656 F.3d 511, 516 (7th Cir. 2011) (citing *Raintree Homes, Inc. v. Village of Long Grove*, 209 Ill. 2d 248, 258 (2004); *Independent Voters of Illinois v. Illinois Commerce Comm'n*, 117 Ill. 2d 90, 104-05 (1987); *HPI Health Care Services*, 131 Ill. 2d at 160; and *Peddinghaus v. Peddinghaus*, 295 Ill. App. 3d 943, 949 (1998)).

¶ 54　Any misstatement of the law by the trial court does not render its decision against the manifest weight of the evidence because Joseph's unjust enrichment claim fails since the evidence does not support that cause of action. Joseph's unjust enrichment claim rests on the allegation that Robert owes him rent for Lombard Auto's use of Joseph's warehouse. To support his action for unjust enrichment, Joseph must show that Robert has unjustly retained a benefit to Joseph's detriment, and that Robert's retention of the benefit violated the fundamental principles of justice,

equity, and good conscience. See *HPI Health Care Services*, 131 Ill. 2d at 160. Our review of the record establishes that Joseph failed to make this showing because, as the trial court correctly found, Joseph, as a co-owner of Lombard Auto, benefited at least as much as Robert did from Lombard Auto's use of Joseph's warehouse, and, more significantly, Joseph benefitted by using over $100,000 of Lombard's Auto's money to rehab his warehouse. Accordingly, the trial court's rejection of Joseph's unjust enrichment claim is not against the manifest weight of the evidence.

¶ 55 Furthermore, Joseph's claim for rent payments from Robert for Lombard Auto's use of Joseph's warehouse still fails when analyzed as a *quantum meruit* claim. To recover under *quantum meruit*, a plaintiff must prove that "(1) it performed a service to the benefit of the defendant, (2) it did not perform the service gratuitously, (3) the defendant accepted this service, and (4) no written contract existed to prescribe payment for this service." *Jameson Real Estate, LLC v. Ahmed*, 2018 IL App (1st) 171534, ¶ 61.

¶ 56 Joseph argues equity requires that he should be compensated because Robert profited from Lombard Auto's use of the warehouse and Joseph established every element of a *quantum meruit* claim. Specifically, he contends the evidence showed that (1) the warehouse benefitted Lombard Auto and Robert because the business needed space to park its vehicles and Joseph purchased the warehouse with his own funds, (2) no evidence indicated that Joseph provided the use of the warehouse to Lombard Auto gratuitously, (3) Robert admitted that he and Joseph discussed the warehouse before Joseph purchased it with his own money and Robert never objected to the purchase, Robert knew Lombard Auto was using the warehouse and never objected until September 2014, and Lombard Auto continued to use the warehouse anyway without any further objection, and (4) there was no lease for the warehouse.

¶ 57    Joseph's *quantum meruit* argument lacks merit. First, Joseph benefitted just as much as Robert did from Lombard Auto's use of the warehouse because it enabled them to operate their business more easily since it provided sufficient space for storing and detailing the vehicles. Furthermore, the evidence indicates that Joseph provided the use of the warehouse to Lombard Auto gratuitously because he never requested rent for the warehouse and instead used over $100,000 of Lombard Auto's funds to rehab the warehouse he alone owned. We conclude that the trial court's rejection of Joseph's claim for rent from Robert for Lombard Auto's use of Joseph's warehouse was not against the manifest weight of the evidence.

¶ 58                                    B. Robert's Cross-Appeal

¶ 59    Robert limits his cross-appeal to a single issue—Joseph's alleged breach of fiduciary duty to Robert when Joseph used at least $100,916.88 of Lombard Auto's funds to rehabilitate and add improvements to his warehouse. Robert argued in the trial court that Joseph breached his fiduciary duty by using Lombard Auto's assets without compensating Lombard Auto. See *Levy v. Markal Sales Corp.*, 268 Ill. App. 3d 355, 369 (1994) ("It is well-settled that a fiduciary's use of corporate assets to further his own goals is a violation of his fiduciary duties.").

¶ 60    The trial court found that Robert failed to prove this breach of fiduciary duty claim because, *inter alia*, Lombard Auto was a closely held corporation, so Lombard Auto must bear the losses occasioned by Joseph's poor judgment or mistake of judgment since Joseph's decision did not involve fraud, illegality, or a conflict of interest. See *Borys*, 207 Ill. App. 3d at 620.

¶ 61    First, Robert argues that the trial court erred as a matter of law when it denied this claim because the court improperly considered the defense of the business judgment rule even though Joseph never pled it. Robert argues, pursuant to section 2-613(d) of the Code of Civil Procedure

(Code) (735 ILCS 5/2-613(d) (West 2020)), that the business judgment rule defense is an affirmative defense or at the very least a ground which, if not expressly stated in the answer, would be likely to take Robert by surprise. Robert asserts that Joseph forfeited the business judgment rule by failing to plead it as required by section 2-613(d), and the defense cannot be considered even if the evidence suggests its existence.

¶ 62　We review *de novo* Robert's contention that the trial court erred as a matter of law in considering a defense never pled by Joseph, in violation of section 2-613(d) of the Code. See *Travelers Insurance Co. v. First National Bank of Blue Island*, 250 Ill. App. 3d 641, 645 (1993).

¶ 63　"The business judgment rule is a presumption that directors of a corporation make business decisions on an informed basis, in good faith, and with the honest belief that the course taken was in the best interests of the corporation." *Ferris Elevator Co. v. Neffco, Inc.,* 285 Ill. App. 3d 350, 354 (1996). "Although the presumption can serve as a complete defense in some cases, it is not an affirmative defense that must be asserted by a defendant." *Babbitt Municipalities, Inc. v. Health Care Service Corp.*, 2016 IL App (1st) 152662, ¶ 47. "Rather, it is a rebuttable presumption that arises as a matter of law; the burden is thus on the plaintiff to present sufficient evidence to rebut it." *Id.*; see *Ferris Elevator Co.*, 285 Ill. App. 3d at 355 (holding "that the business judgment rule is neither an affirmative [nor] special defense which need be plead pursuant to section 2-613 of the [Code]"). Accordingly, Robert's first argument fails.

¶ 64　Second, Robert argues that the trial court's decision was against the manifest weight of the evidence because no evidence in the record supports the trial court's finding that Joseph's complained-of conduct was a bad business decision. Robert argues that the trial court disregarded the manifest weight of the evidence, which showed that Joseph seized Lombard Auto's funds to

pay for construction and rehabilitation expenses for his own personal warehouse, Robert never agreed to Joseph taking Lombard Auto's funds to permanently improve his warehouse, and Joseph never repaid any of that money.

¶ 65    The trial court found that Robert failed to prove this breach of fiduciary duty claim because he did not show by a preponderance of the evidence that Joseph breached his fiduciary duty and that those breaches proximately caused damages to Robert. In addition to finding that the business judgment rule was applicable, the court stated that if Joseph had a conflict of interest because he attempted to collect the maximum amount of rent from Lombard Auto for his warehouse, Lombard Auto sustained no damage because Joseph was not successful in obtaining that rent. The court found that Lombard Auto benefited from the warehouse arrangement because credible testimony established that Lombard Auto needed more space to store vehicles and Robert left Joseph to handle the problem when Lombard Auto lost its free parking at the nearby restaurant. Moreover, manager Sacco testified credibly that when Joseph obtained the necessary space and Lombard Auto started using it in 2009 for storage, the arrangement made Lombard Auto's operations easier and benefited Lombard Auto, which kept doing business and was more profitable in the two years after the warehouse was purchased. The court concluded that the evidence did not show that Joseph spending Lombard Auto's money on improvements to the inside of his warehouse for Lombard Auto's detailing work was illegal, fraudulent, or a conflict of interest. At most, it was a bad business decision, in which Robert was complicit.

¶ 66    Robert cannot point to any factual issue on which an opposite conclusion is clearly evident. See *Indeck Energy Services, Inc.*, 2021 IL 125733, ¶ 56. Accordingly, we conclude that the trial

court's finding that Robert did not prove his breach of fiduciary claim was not against the manifest weight of the evidence.

¶ 67                                III. CONCLUSION

¶ 68    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 69    Affirmed.